# SUPREME COURT OF TENNESSEE,

7L    1
9L   85
10L  134
16L  552
1pi 684
2pi 252

### FOR THE

# WESTERN DIVISION.

JACKSON, . . . . . . . . . . . . . . . . . APRIL TERM, 1881.

---

### W. H. CHERRY *v.* JOHN T. FROST *et al.*

1. CERTIFICATE OF STOCK. *Assignment.* An assignment for value, in due course of trade, of a certificate of stock in a corporation, with a blank power of attorney to transfer the stock on the books of the company, passes the whole title, legal and equitable.

2. SAME. *Same. Collateral security.* If the pledgee, as collateral security, of a certificate of stock so assigned, sub-pledges the certificate for money loaned to him in ignorance of the owner's equity, the sub-pledgee will be entitled to hold the stock, as against the owner, to the extent of the consideration.

3. SAME. *Collateral security for money borrowed. Due course of trade.* Where a note is given for money borrowed at the time, secured by stocks pledged as collateral, and the note is renewed at maturity, upon an extension of time, and the new note secured by a pledge of the same or other stocks, assigned with power of attorney to transfer, the pledgee, who receives them without notice of any outstanding equity, takes them in due course of trade, free from such equity.

4. SAME. *Collaterals. Purchaser for value.* If the holder of a note secured by stocks as collaterals, after the contract has been closed, exchange

1—VOL. 7.

any of the collaterals with the maker of the note for other stocks of equal value, he would take the latter as security for a pre-existing debt, but would be a purchaser of them to the extent of the consideration given in exchange.

5. SAME. *Stockholder*. *Pledgee*. At the time a certificate of stock was wrongfully sub-pledged only a part of the stock was paid up, the corporation then holding the note of the stockholder for the residue payable on call, and the stockholder afterwards made a payment on the stock and gave a negotiable note for the residue. *Held*, that the sub-pledgee could only claim, as against the owner, the proportion of the stock paid up at the time he received the certificate.

FROM SHELBY.

Appeal from the Chancery Court at Memphis.  R. J. MORGAN, Ch.

GANTT & PATTERSON for complainant.

HARRIS & TURLY for defendants.

COOPER, J., delivered the opinion of the court.

On the 28th of June, 1871, the complainant, W. H. Cherry, borrowed from the City Bank of Memphis, $1,000, for which he executed and delivered to the bank his note, due on demand, and, at the same time, deposited with said bank as collateral security, a certificate of forty shares, of $100 each, of the capital stock of the Mississippi Valley Insurance Company. The certificate was in the following form: "This is to certify that W. H. Cherry is entitled to forty shares in the capital stock of the Mississippi Valley Insurance Company, transferable in person or by attorney on surrender of this certificate." On the back of the

certificate was an assignment for value and the printed form of a power of attorney to make the transfer on the books of the company, left blank as to the name of the attorney, and signed by complainant.

On the 19th of June, 1872, complainant executed to the City Bank of Memphis his note at ninety days for $1,000, another sum of money that day borrowed by him, and to secure its payment delivered to the bank, as collateral security, with a similar endorsement and blank power of attorney as above, a certificate of thirty shares of $100 each in the capital stock of the Merchants National Bank. The certificate was in the form of the certificate as above.

On the 31st of July, 1872, the City Bank suspended payments, and proved to be utterly insolvent. Upon inquiry, complainant learned that the certificates of stock, deposited as collateral security for the payment of his notes, were claimed by the defendant, John T. Frost, as having been pledged to him to secure money borrowed from him. by the City Bank. Complainant offered to pay the amount of his two notes upon surrender of his certificates, which offer was refused by the defendant Frost. Complainant then, on the 1st of August, 1872, notified the Mississippi Valley Insurance Company and the Merchants National Bank not to assign the stock on their books, no assignment having yet been made under the power, and on the 9th of August, 1872, he commenced this suit to enjoin the transfer, and to assert his rights. The chancellor, on final hearing, dismissed his bill, and he appealed.

The claim of the defendant Frost is, that on the 10th of May, 1872, he loaned to the City Bank of Memphis $12,000, for which the bank executed to him two notes of that date, one for $4,000 at sixty days, and the other for $8,000 at ninety days, and, at the same time, delivered to him various collaterals, and among others the two certificates of stock deposited by the complainant with the City Bank to secure his notes as above. The defendant further claims that he received these collaterals, under these circumstances, without any notice of the complainant's equity, and under the full belief that they were the property of the bank. It does sufficiently appear that defendant Frost was ignorant of the complainant's rights, or of the nature of the bank's title to the stock, until shortly before or at the time of the filing of the bill. It further appears that the collaterals received from the bank were insufficient to pay the debt of the bank to Frost, and that if he is entitled to the collaterals in controversy, under his claim, they will not satisfy his debt.

The complainant insists that the defendant is not a *bona fide* purchaser for value and without notice within the rule of law relied on by the defendant. He bases his contention, first, on the character of the transaction between the defendant and the bank, and, secondly, on the character of the certificate.

It does satisfactorily appear that no money was actually loaned by the defendant to the bank on the 10th of May, 1872. About $3,000 of the considera-tion of the notes of the bank executed on that day

had been loaned by the defendant to the bank May
17, 1871. On January 10, 1872, a new note was
given by the bank for the amount at four months.
On the same day, the bank borrowed from Frost the
additional sum of $5,000, giving its note therefor at
four months. On the 20th of February, 1872, the
bank borrowed from Frost the additional sum of $4,000,
and gave its notes therefor. On the 10th of May,
1872, these notes were renewed by the two notes for
$8,000 and $4,000, for the security of which the de-
fendant claims that the collaterals in controversy were
given. The interest, or discount on the notes exe-
cuted January 10, 1872 and subsequently, at the rate
agreed upon, was paid by the bank in advance when
the notes were given.

It is first insisted by the complainant, upon this
state of facts, that, even if it be conceded that cer-
tificates of stock are of that character of securities
which pass to a *bona fide* purchaser for value free
from the equities of third persons, the defendant only
received these certificates as security for a pre-existing
debt, and not for a consideration passing at the time.
The defendant undertakes to meet this argument by
saying in his answer and deposition that each of these
transactions was a new one, the previous notes paid,
and the new note or notes thereupon executed for the
new consideration passing. The deposition of the pres-
ident of the bank, with whom the transactions were
made, is not taken, and, perhaps, in the absence of
any positive testimony to the contrary, the defendant's
evidence must be allowed to prevail. The substance

of what was done, however, whether the form of passing and repassing checks was actually adopted or not, was a new transaction.    A note taken up by a note given to renew it is, in general, extinguished: *Hill* v. *Bostick*, 10 Yer., 410.    A person who gives his money, goods or credit for a note at the time of receiving it, or who then on account of it sustained loss or incurred liability, is a holder in the due course of commercial transactions: *Kimbro* v. *Lytle*, 10 Yer., 417.    And the fact that a security has been transferred, under such circumstances, in fraud of a third person, will not affect the holder's right if entitled to the character of a *bona fide* holder in due course of trade: *Nichol* v. *Bate*, 10 Yer., 429.    The defendant, at each renewal by the bank of its notes, parted with the previous note, which was extinguished, and received the new note, upon an extension of the time of payment, with the same or other collaterals.    It is not like the receipt of collaterals upon an old note which continues to exist, and is not based on the consideration of the collaterals.    In the one case, the collaterals may be surrendered to the rightful owner, leaving the debt and the consideration of the debt unaffected. In the other case, the collaterals cannot be taken without depriving the creditor of a part of the consideration of his contract.    It is to the former class of cases that the rule invoked by the complainant applies, not to the latter: *Craighead* v. *Wells*, 8 Baxt., 38.

It is next insisted, in this connection, that the certificate of stock in the Merchants Bank was not received by the defendant on the 10th of May, 1872,

because this certificate was not deposited by the complainant with the bank until the 19th of June, 1872, when he executed his second note for $1,000. The weight of testimony is in favor of the complainant on this contention. The complainant swears positively to the fact that he did pledge the certificate at that time as collateral security for the note then executed. The defendant, while certain of the receipt of other certificates on the 10th of May, 1872, and probably before that time, is not sure as to this certificate. He concedes, moreover, that he was in the habit of sometimes exchanging with the bank securities received by him as collateral for securities of equal value. There is very little doubt that the certificate in question was thus received, and not on the 10th of May, 1872, when the notes of the bank were executed. The certificate, in that view, would be received as security for a pre-existing debt, but for a consideration then passing, namely, the surrender of other securities of equal value. The party would be a purchaser to the extent of the consideration. The question would therefore be, whether a person who buys from another a certificate of stock, transferred with a blank power of attorney, is entitled to hold that stock as against the true owner? This leads us to the second branch of the case—the character of a certificate so endorsed, and the right of a *bona fide* purchaser for value.

Stock in a corporation, in the sense of the interest of the stockholder, is a species of incorporeal personal property, in the nature of a chose in action. A certificate of stock is only written evidence of the owner-

ship of the shares of stock named therein, and is not negotiable. Although, by the by-laws of the ·corpora- tion, shares of the stock may only be transferable upon the books of the company, an equitable right in them may be acquired by a delivery of the certificate, or by a written assignment or contract, which will be good between the parties, and may be perfected as against the corporation and third parties by notice of the assignment, or contract. The effect of a delivery of the certificate with an assignment and a blank power of attorney on the back thereof has been a mooted point. It came before this court in *Cornick* v. *Richards*, 3 Lea, 1, where the contest was between the holder of a certificate so assigned as collateral security and other creditors of the assignor. Two of the judges, McFarland and Cooper, were of opinion that a complete legal title to stock could only be ac- quired by a transfer on the books of the company; that an assignment of a certificate of stock, with a blank power of attorney to make the transfer on the books, did not give a complete legal title, but only an equity, good between the parties, and which might be made good against the corporation, and against the creditors and assignees of the assignor by notice to the corporation. The other three judges held that the assignment of the certificate, with a blank power of attorney signed by the assignor, either by way of sale or as collateral security, would pass the title to the assignee as against the creditors of the assignor, without any transfer upon the books of the company, or notice to the corporation. The decision did not go any

further, for it was not demanded by the facts of the case. And Judge Freeman, in delivering the opinion of the majority of the court, said : "It is proper to add, that as a matter of course we do not hold these certificates negotiable, or that any of the incidents of such character goes with them by the assignment, so that the assignee must take subject to previous equities as any other assignee standing in the shoes of the assignor."

The case now before us raises the very question suggested in the latter clause of the sentence quoted. A pledgee of stock has clearly no right, either by absolute sale or sub-pledge, to convey any greater interest than he himself has in the stock pledged : *Talty* v. *Freedman's Saving and Tr. Co.*, 93 U. S., 321. The equity of the pledgor is to redeem his stock by the payment of the debt secured, and that equity would prevail against the equity of any assignee standing in the shoes of the assignor. The question is, therefore, squarely raised in this case whether a sub-pledgee of a certificate of stock transferred with a blank power of attorney, can occupy a better position than his pledgor. In the view taken by the minority of the court in *Cornick* v. *Richards*, and still entertained by them, the assignment of the certificate in that form only passed the equitable title, and any subsequent assignee would, under well-settled law, take subject to the prior equity. In the view of the majority of the court, such an assignment passed the legal title, and, logically, the subsequent assignee would also have the legal title, which, coupled with the equity arising from

the consideration of the sale or pledge, would prevail over the prior equity.

The weight of authority, in those States which have adopted the rule that the assignment of a certificate of stock, with a blank power of attorney to transfer, passes the whole title, legal and equitable, undoubtedly is that a sub-assignee, by sale or pledge, may acquire a better right than his assignor. The reason is, that the owner has passed the legal title with an unlimited power of disposition, and cannot set up an unknown equity against a title acquired thereunder in good faith for a valuable consideration, and in due course of trade. It is conceded that the delivery of a chattel or chose to another in pledge is insufficient to preclude the real owner from asserting his rights in case of an unauthorized disposition of it by the pledgee; but, it is said, "if the owner intrusts to another not merely the possession of the property, but also written evidence over his own signature of title thereto, and of unconditional power of disposition over it, the case is vastly different": *McNeil* v. *Tenth National Bank*, 46 N. Y., 325. The owner is estopped to dispute the title which he has apparently conferred:. *Wood* v. *Smith*, 37 Leg. Int., 315; *Cushman* v. *Thayer Man. Co.*, 76 N. Y., 365; *Prall* v. *Tilt*, 28 N. J. Eq., 483. And the owner may always prevent this result by specifying in his transfer that it is made as collateral security.

Upon a reconsideration of the question, the majority of the court adopt these conclusions as the necessary result of the principle settled in *Cornick* v. *Richards*, and consider the suggestion in the opinion in that case.

that the assignee must take subject to previous equities as an inadvertent dictum. The defendant Frost is, therefore, entitled to hold the stock in controversy for the satisfaction of his debt.

But the proof shows that on the 10th of May, 1872, when the defendant took the Mississippi Valley Ins. Co. certificate of stock, the complainant had paid only forty per cent. of the stock, and the defendant is only a purchaser in due course of trade to the extent of its then value. The subsequent payment on and change of the form of complainant's stock note into a negotiable note still unpaid, no matter what may have been the intention with which the change was made, would not increase the defendant's interest.

With this modification, the decree below will be affirmed. The defendant Frost will pay the costs of this court.

The costs of the court below will be paid as directed by the chancellor, and the cause will be remanded for further proceedings upon the motion of the defendant Frost for damages by reason of the injunction.