THE NEW YORK, LAKE ERIE AND WESTERN RAIL-ROAD COMPANY, RESPONDENT, *v.* JULIEN T. DAVIES, AS ASSIGNEE AND RECEIVER OF GRANT & WARD, SUBSTITUTED AS DEFENDANT, ETC., APPELLANT.

*Pledge of stock to secure a loan — the hypothecation of the stock by the pledgee is a conversion thereof — the pledgor cannot recover the stock without paying the debt.*

On April 26, 1884, the plaintiff borrowed from the firm of Grant & Ward the sum of $455,000, payable in four months, with interest at the rate of five and one-half per cent per annum, and as security for such payment deposited with the said firm certificates for 11,477 shares of the capital stock of a railroad company. It also gave to the said firm its promissory note, reciting the deposit of the shares as security and authorizing their sale in case of non-payment of the note when due. Before the maturity of the note, and on May eighth, the firm made a general assignment to the defendant Davies, and on the following day he was appointed the receiver of the assets of the firm. Prior to that time the firm had parted with all the certificates deposited with it by the plaintiff, some having been sold, and some hypothecated to secure loans made to it. One hundred shares had been hypothecated with other securities to an insurance company, to secure a loan which had been repaid by the sale of the other securities prior to May twenty-fourth.

In this action, brought by the plaintiff to recover the said 100 shares, the defendant Davies was substituted as defendant in the place of the insurance company.

*Held,* that although the unauthorized hypothecation of the 100 shares constituted a conversion thereof, and authorized the plaintiff to maintain an action therefor without a demand and tender, yet it did not destroy the contract of pledge so as to entitle the pledgor to demand a return of the collateral without a tender or payment of the debt.

That as this action related only to a portion of the stock pledged, the court below should have applied the doctrine of recoupment with reference to the value of the shares, that is, it should have determined the relation of the 100 shares to the whole number deposited, the value of each share, and the amount which was to be allowed as a counter-claim in response to the demand for the damages occasioned by the conversion.

APPEAL from a judgment rendered at the New York Special Term.

*William B. Hornblower,* for the appellant.

*Joseph Larocque,* for the respondent.

BRADY, J. :

The plaintiffs borrowed from the firm of Grant & Ward the sum of $455,000 on the 26th of April, 1884, payable in four months, with interest at the rate of five and one-half per cent per annum, and as security for such payment, deposited with the firm named certificates for 11,477 shares of the capital stock of the Cleveland, Columbus, Cincinnati and Indianapolis Railroad Company. They gave to the firm a promissory note, which recited the deposit of the shares as security and authorized the sale of them, provided the promise made in the note was not performed, *i. e.,* the payment of the loan made when due. This was the only authority given to sell the securities.

On the 6th of May, 1884, and, therefore, long before the maturity of the loan, the firm named failed, and on the eighth of that month made a general assignment to the defendant Davies, who, on the following day, was appointed the receiver of the assets of the firm, including those purporting to have passed under the assignment.

At the time of the appointment of the receiver, and, therefore, as already suggested, before the maturity of the note given by the plaintiffs, and, of course, before any pretense of any default in the payment of the note, the shares mentioned had been hypothecated

and, indeed, some sold by or on account of the firm. They had been separated by the firm into a great number of lots and deposited as security for twenty-two loans made by them, on their own account, with various corporations and firms, amounting in the aggregate to over a million and a-half of dollars, so that, as stated by the counsel for the respondents, at the time of the failure and assignment, not one share of the securities belonging to the plaintiffs remained in the possession or under the control of the firm. Indeed, it appears that about 5,000 shares of the securities, deposited as collateral security, had been sold up to the 24th of May, 1884.

This action involves only 100 shares which had been hypothecated by the firm of Grant & Ward to the Mutual Benefit Life Insurance Company of New Jersey, as part of the security for a loan of $100,000, but which loan, prior to the twenty-fourth of May, the insurance company had been repaid, by a sale of other securities in their hands sufficient to satisfy the loan, without resorting to the 100 shares in controversy, and which formed a part of the number of certificates deposited with the firm of Grant & Ward. The insurance company, therefore, had no lien upon them at the time of the commencement of this action.

The defendant Davies, by proper application and order relating to the subject, was substituted as defendant for the Mutual Benefit Life Insurance Company, and the certificate for the shares of stock in controversy was deposited with the Farmers' Loan and Trust Company, subject to the further order of this court. The receiver, therefore, has never had possession of this stock certificate, and his intervention is for the purpose of securing it as a part of the assets of the estate he represents. The controversy involves the right to the possession of the certificate which the action was brought to determine, the plaintiff claiming it by virtue of the conversion which was made of the stock as an absolute right growing out of such conversion, and the defendant, as the receiver of Grant & Ward, contending that he has the right to recoup or off-set or counter-claim the note against any claim the plaintiff may have in consequence of such conversion. It must be answered, for the purpose of this appeal, that the hypothecation of the certificate of stock by Grant & Ward was a violation of the contract existing between them and the plaintiffs, and was a conversion ; but it seems to be established by a

series of cases that even where such a conversion characterizes the conduct of the pledgee, it does not amount to such a destruction of his special interest in such collateral as to destroy the contract of pledge, and entitle the pledgor to demand return of the collateral without a tender or payment of his debt. (Colebrook on Col., §§ 342 and 444; *Donald* v. *Suckling*, L. R., 1 Q. B., 585.; *Halliday* v. *Holgate*, L. R., 3 Ex., 299; *Talty* v. *Freedmans' Savings and Trust Co.*, 93 U. S., 321; *Lewis* v. *Mott*, 36 N. Y., 395.)

The only effect of the conversion is to render it unnecessary to make a demand and tender, the pledgee having, by the conversion, placed it beyond his power to comply with the demand. (*Wilson* v. *Little*, 2 Comst., 443; *Lawrence* v. *Maxwell*, 53 N. Y., 19.)

In this case, as the firm of Grant & Ward had failed, and at the time of the failure were not in possession of the certificates of stock in controversy, nor, indeed, of any of the certificates of stock deposited with them, as collateral, for the loan made to the plaintiffs, neither a tender nor demand was necessary. The court, as said in some of the cases, does not require the performance of what must be an idle ceremony. It is not pretended, from anything which appears upon the record, that the firm of Grant & Ward, or its representatives, had the ability to redeem these certificates and thus place themselves in the position of being able to comply with the demand.

The learned counsel for the respondents assumes that if the pledgee voluntarily, by his own act, places the pledge beyond his own power to restore it, such act amounts to a waiver of his pledge. But no case has been found which decides what is in substance contended for, that when such an act is done as suggested, the pledgee not only waives his pledge, but also the right of recoupment or set-off created by the existence of the debt which the pledge was intended to secure.

The learned judge, in the court below, did not consider the contention thus suggested, namely, the right to recoup. He seems to have decided — and so far has expressed himself correctly upon the proposition — that the conduct of the firm of Grant & Ward had rendered it unnecessary to make any tender of the amount of the note and demand of the stock.

It must be noted that this is an action in effect between the original parties to the suit, and not between the plaintiffs and a sub-

pledgee, because, although the hundred shares of stock were deposited with the insurance company, they were released from any lien, the debt for which they were given as collateral having been paid, and they became, therefore, the property of the pledgees, their special interest in them being by the act of payment restored.

The really embarrassing question presented by the record relates to the manner in which the application of the doctrine of set-off or recoupment or counter-claim is to be made. In the adjudications to which reference has been made, not only was the obligation to pay the debt, for which the collaterals were given, recognized, but the transactions in each case were an entirety, and the debt applied to the entire pledge.

This action relates only to a portion of the pledge; but inasmuch as the pawn deposited was a unity in its character, *i. e.*, certificates of the stock of the same railroad company, it would seem to have been the duty of the learned judge, in the court below, to treat the doctrine of recoupment with reference to the value of the shares, and apply *pro rata*, according to their number, the amount of the debt and their value. There is no doubt that the obligation assumed by the loan was a proper subject of counter-claim or recoupment, or both. (Code Civ. Pro., § 501; *Andrews* v. *Artisans' Bank*, 26 N. Y., 298; *Carpenter* v. *Manhattan Life Ins. Co.*, 93 id., 552; Waterman on Set-off, etc. [2d ed.], 170, 445, 565.)

The effect of this mode of investigation would have determined the relation of the hundred shares to the whole amount deposited, the value of each share and the amount which was to be allowed as a counter-claim, in response to the demand for damages occasioned by the conversion.

The plaintiffs would be entitled to a judgment for the value of the stock less the burden of it, or to such judgment as the court might direct for the stock upon the debiting its burden as ascertained by the investigation suggested. This would be a disposition of the controversy according to the whole law of the land. It would have perhaps been the better mode of procedure for the plaintiffs to have brought an action to recover the whole of the stock deposited with the firm of Grant & Ward as collateral after a tender of the amount due. This not having been done, and the right of action existing, the question to be determined is what

is the best rule to apply under the facts and circumstances distinguishing the case.

The rule suggested appears to be the just one, and, therefore, in order that it may be applied a new trial should be granted, with costs to abide the event.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment reversed, new trial granted, costs to abide event.