# MANKEY *v.* WILLOUGHBY.

---

EQUITY PLEADING AND PRACTICE; ANSWER AS EVIDENCE; WITNESSES, COMPETENCY OF; PRINCIPAL AND SURETY; SUBROGATION; COLLATERAL NOTES, INDORSERS OR GUARANTORS OF; BURDEN OF PROOF.

1. Upon a hearing in equity on the pleadings and testimony taken, the answers when not called for under oath by the bill, are not evidence of the facts alleged therein, but may be referred to as showing the grounds of defense.

2. Statements of one of two defendants in a suit in equity by an executrix to establish a lien upon certain certificates of shares of real estate, pledged as collateral security, and received by her upon payment of a collateral note made by such defendant and indorsed by the decedent, of what transpired between himself and the decedent in regard to the matter, are not admissible against the complainant, if objected to; *construing* Sec. 1064, Code D. C.

3. An indorser or guarantor of a promissory note secured by collateral, standing as he does in the position of a surety, is subrogated to the rights of the maker, if he pays the note, and is entitled to receive the collateral in the same condition in which it stood in the maker's hands, and to all remedies thereon available to the latter; and this right does not depend on contract, but rests upon principles of justice and equity.

4. Where the executrix of a deceased indorser or guarantor of a promissory note, secured by certain certificates of shares of real estate, which had been assigned in blank by the owner thereof and turned over to the maker of the note to be used by him, paid the note and received the collateral, a defense by the owner in a suit by her against such owner and maker to establish a lien upon such certificates and ownership thereof, is unavailable when to the effect that the maker of the note abused the confidence reposed in him by such owner in not using the certificates in the way and for the purpose only for which they were obtained and in not returning them after they were so used.

5. The holder of a promissory note secured by collateral is required by law, upon payment of the note by an indorser or guarantor, to deliver to the latter the note and collateral as means of indemnity to him.

6. In a suit in equity by the executrix of a deceased indorser or guarantor of a collateral note to enforce the collateral after payment by her of the note, against a former owner of the collateral and the maker of the note, where the defense is that after the maker had borrowed money on the collateral for which purpose he had obtained it from the owner, the deceased repaid the loan with money sent him by the maker, and then borrowed money for his own use on a note of the maker, indorsed and guaranteed by him and secured by the collateral, the burden of proof is upon the defendants to make out such defense by clear and definite testimony, in the absence of which a decree is not erroneous which grants the relief asked by the complainant and provides that upon default of the redemption of the collateral by the defendants, or one of them, the collateral shall be sold and the proceeds applied under direction of the court.

No. 1251.   Submitted December 9, 1902.   Decided March 3, 1903.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, granting the relief prayed for in a bill in equity to establish a lien upon or ownership of certain certificates of shares in real estate, pledged as collateral security.          *Affirmed.*

The COURT in the opinion stated the case as follows:

The bill in this case was filed by Mrs. Jennie R. Willoughby, the widow and executrix of Westel Willoughby, deceased, against George W. Mankey and Anthony M. Clegg,

to enforce a lien upon or claim of ownership of certain certificates of shares in certain real estate, situate in the District of Columbia, and which certificates were pledged as collateral security for a certain promissory note made by Anthony M. Clegg, payable to Robert A. Phillips, or order, three months after date, for the sum of $600, and upon which the said Westel Willoughby was an accommodation indorser or guarantor. The complainant alleges that she, as the executrix of her husband, paid the note, and received the certificates of shares of real estate, which were pledged as collateral security, and which she asked to have registered in her name as owner, or that they be sold to indemnify her for the money paid for taking up the note made to Phillips, upon which her testator was indorser or guarantor.

Among the facts charged in the bill are these: That among the claims filed by creditors against the estate of Westel Willoughby, deceased, was a certain promissory note for $600, dated October 15, 1897, made by the appellant Anthony M. Clegg, and payable to R. A. Phillips three months after date, for $600, and which note was indorsed or guaranted as follows: " I guarantee the payment of this note without notice, demand, or protest, for value received;" signed Westel Willoughby. At the maturity of the note, to wit, January 15th, 1898, the maker Clegg having made default in payment thereof, and the guarantor having died before that time, Phillips, the payee and holder of the note, proved the same as a claim due from the estate of her husband. Thereafter, that is to say, on February 28th, 1899, the complainant as executrix of her husband's estate, paid to Phillips the sum of $682.17, that being the amount of principal and interest due upon the note; and thereupon Phillips delivered up to the complainant the note, together with five certificates of the Edgewood Syndicate which were held by said Phillips as collateral security for the payment of the note, and which had been deposited with him by Clegg, the maker of the note, at the time of obtaining the money thereon. These certificates were all issued to the appellant Mankey,

and he indorsed them in blank and delivered them to Clegg
to be used by the latter as security in obtaining money.

The note upon which the guarantee was written is in the
following form:

"$600.    Washington, D. C., October 15, 1897.    Three
months .after date I promise to pay to R. A. Phillips,
or order, six hundred dollars, for value received, with
interest after maturity at the rate of ten (10) per cent
per annum, until paid, having deposited with him as col-
lateral security 5 certificates for one share each of 1–58 equal
share in the Edgewood Syndicate, numbered 11 to 15 inclu-
sive; and in case this note shall not be paid when due, I
hereby give the said R. A. Phillips authority to sell the
said note or chattels, or any part thereof, for my account, on
the maturity of this note, or at any time thereafter, at public
or private sale, at his discretion, without advertising the
same or giving me any notice, and to apply so much of the
proceeds of said sale to the payment of this note as may be
necessary to pay the same, with all interest due thereon, and,
also, to the payment of all expenses attending the sale of the
said note or chattels, and in case the proceeds of the said
sale shall not cover the principal, interest and expenses, then
I hold myself responsible and bound to pay the balance.
                                        A. M. CLEGG."

It was upon this note that the indorsement or guarantee
of Willoughby was written, which we have already recited.

The certificates referred to as having been deposited as
security for the payment of the note bear date August 15,
1893, and were issued to G. W. Mankey; and after describ-
ing the property of the syndicate, and the purpose for which
it was acquired, it is certified in each of the certificates that
Mankey had paid $210, and was to pay the further sum of
$190, in instalments, which would entitle him in respect to
each of the certificates to 1–58 equal share in the real estate
described; and in the last clause of these certificates it is
declared, that "this certificate is to be treated as personal
property, and may be assigned and transferred in whole or

in part on the books of the syndicate, with the approval in writing of the undersigned, but is not to charge the under-signed beyond the amount of money that may actually be paid in, or for any loss by reason of the depreciation in value of said real estate." These certificates were executed under the hand and seal of the trustees of the syndicate, and acknowledged by them.

On these certificates were written assignments, executed under hand and seal of Mankey, to whom they had been issued. The assignments have been omitted from the printed transcript of the record; but there is set out in the brief of counsel, and about which there is no question, one of the assignments as a sample, and is in the following form:

"For value received, the receipt of which is hereby acknowledged, I have sold, assigned, transferred, and set over, and do hereby sell, assign, transfer and set over unto ————, without recourse to me, all my right, title and interest in and to the within named syndicate certificates, and all of my rights and interests thereunder, and do hereby expressly authorize the secretary of the said syndicate as my attorney to make such transfer on the books of the syndicate, to cancel this certificate, and issue in lieu thereof the proper certificate to the assignee thereof. In witness whereof I have hereunto set my hand and seal this 20th day of December, 1895.

                    "GEO. W. MANKEY."   (Seal.)

There is no question made of the fact that the executrix of Willoughby paid and took up the note for $600 after it had been proved as a claim against the estate of her testator, and at the same time received from Phillips the five certi-ficates of the Edgewood Syndicate which had been pledged as collateral security for the note. But the contention on the part of the defendants is, that Willoughby realized the money on the note and applied it to his own use, or if that was not done, that he received money of Clegg with which to pay and take up the note when it became due, and that he failed to do so.

In the answer of Mankey he states that he is the owner of the certificates described in the bill of complaint, and was the owner of the same during the summer of the year of 1896, at which time he indorsed the assignment in blank on said certificates and delivered them to the defendant Clegg, under an agreement by which the latter was to be allowed to use the certificates as collateral security upon which to borrow money to aid the said Clegg in completing certain work then being performed by Clegg for the Southern Railroad Company, and upon the completion of the work Clegg agreed to repay the sum so borrowed and secure and return said certificates to the defendant Mankey. That Clegg failed to return the certificates, though frequently requested so to do; and this defendant is informed and believes, and therefore avers, that the sum so borrowed was repaid to the person lending the same, by the said Clegg. He further says, that he is informed and believes, and therefore avers, that the complainant's testator knew of all the circumstances under which Clegg obtained the certificates from this defendant, on the 15th day of October, 1897, when the loan on the note for $600 was obtained, and knew that such use of said certificates was improper and in violation of the terms of the agreement of said Clegg with this defendant.

In the answer of Clegg the same facts are substantially averred; but he avers that after using the certificates to obtain a sum of money as originally contemplated, prior to October 15, 1897, he sent to Westel Willoughby, the complainant's testator, a check for a large sum of money, and instructed him to pay out of the proceeds of such check the amount due by him, the said Clegg, and for which the certificates were used as collateral security. That said Willoughby paid the sum to the person to whom it was due and payable out of the proceeds of the said check, and received and retained the said certificates, which retention of the same by the said Willoughby was without right as against this defendant Clegg and defendant Mankey. That the said Willoughby at the time knew of all the circumstances under which he, Clegg, received the certificates from the defendant Mankey, and

knew that he, Clegg, was bound by his agreement to return the certificates to said Mankey; but thereafter, and prior to the 15th day of October, 1897, while he, Clegg, was in the city of New York, said Willoughby forwarded to him the note exhibited by the complainant, marked Exhibit No. 1, and requested him, the said Clegg, to sign and return the same to Willoughby, to enable him to secure the sum of $600 thereon as a loan, which was done; whereupon said Willoughby indorsed the same and borrowed from R. A. Phillips the sum of $600, and gave said Phillips the said certificates as collateral security for the repayment of said loan. He further avers, that neither he nor the said Mankey received any part of the money so obtained, but avers that Willoughby received the money and applied it to his own use.

*Mr. William Henry White* and *Mr. Harry G. Kimball* for the appellants:

1. Since Westel Willoughby received the consideration for the loan, payment by him (or his estate) extinguished the debt and he (or his estate) is not entitled to subrogation. *Williams* v. *Thurlow,* 31 Me. 392; *Walsh* v. *Wilson,* 130 Mass. 124; *Carlton* v. *Jackson,* 121 Mass. 592; *Putnam* v. *Callamore,* 120 Mass. 454; *Kilborn* v. *Robbins,* 8 Allen (Mass.), 466; *Wadsworth* v. *Williams,* 100 Mass. 126; *Kneeland* v. *Moore,* 138 Mass. 198. For other cases see 24 Encyc. of Law, 192. There is no testimony that Clegg got the money — merely the legal presumption arising from his name appearing as maker of the note, which is rebutted by the above testimony. *Hamburger* v. *Miller,* 48 Md. 317; *Rey* v. *Simpson,* 22 How. 341.

2. Even if Clegg got the money on the loan, complainant has no right of subrogation as against Mr. Mankey, who is a stranger to the transaction. A surety's right of subrogation is limited to the *debtor's claim upon the securities* held by the creditor. *Hampton* v. *Phipps,* 108 U. S. 260, 264; Harris on Subrog., Sec. 381.

3. At most, complainant's testator could claim only as

a cosurety, with the certificates as the other surety, in which case complainant has the right of *contribution* only, not *exoneration* — a lien for *half,* not the *whole,* of the $682.17 paid by her as such cosurety. Brandt on Suretys., Sec. 288; *Young* v. *Lyons,* 8 Gill (Md.), 162; *Smith* v. *Anderson,* 18 Md. 520, 527. But even if Mankey had signed the guaranty with Willoughby, and had deposited the stock himself, complainant would not be entitled to subrogation *as to the certificates.* Sheldon on Subrog., Sec. 170; *Bowditch* v. *Green,* 3 Metc. (Mass.) 360.

4. Complainant has waived whatever rights she may have had. Her right is limited to that which Phillips had; *i. e.,* the specific lien given by the note. Jones on Liens, Sec. 1019; *Bean* v. *Bolton,* 3 Phila. (Pa.) 87; *Lehman* v. *Schmidt,* 87 Cal. 15; *Picquet* v. *McKay,* 2 Blackf. (Ind.) 465; *Boardman* v. *Sill,* 1 Campb. N. P. Cas. 410; *Hanna* v. *Phelps,* 7 Ind. 21; *Thompson* v. *Rose,* 16 Conn. 71; *Spence* v. *Mitchell,* 9 Ala. 744; *King* v. *Fitch,* 2 Alb. L. J. (N. Y. App.) 508; *Kimball* v. *Post,* 44 Wis. 471; *Everett* v. *Saltus,* 15 Wend. (N. Y.) 474, 478; *Maynard* v. *Anderson,* 54 N. Y. 641. Complainant held the security as a trust fund, and could not speculate with it in any event. Harris on Subrog., Sec. 178.

*Mr. Ralph P. Barnard* and *Mr. Guy H. Johnson* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The answers of Mankey and Clegg, not being called for under oath, are not evidence of the facts set forth therein, as against the complainant, but they are proper to be referred to as showing the ground of defense of the parties. Both Mankey and Clegg were examined as witnesses in their own behalf, but Mankey does not profess to have any personal knowledge of the transactions that occurred between Willoughby and Clegg; and the statements of Clegg as to

what transpired between himself and Willoughby, in regard to the matter here involved, being excepted to, are not admissible against the complainant as executrix of Willoughby, under the statute. Code, D. C., Sec. 1064.

The exhibits in the case, to which we have referred, together with the undisputed facts as disclosed in the testimony, present, at least, a *prima facie* case for the relief prayed by the complainant. The case as thus presented, apart from the matters of defense, is plainly within the established principle, that a surety, or a party who stands in the position of a surety, such as indorser or guarantor, is entitled to receive and to be subrogated to all the rights and remedies of the creditor whose debt he has been required to pay, as to any security, fund, lien or equity, which the creditor had against any other person or property, on account of such debt. This right of the surety to be subrogated, on the payment of the debt, to the securities held by the creditor, does not depend upon contract, but rests upon principles of justice and equity. The surety is entitled to have the security in the same plight and condition in which it stood in the creditor's hands, and is entitled to all the remedies thereon that were available to the creditor. *Wright* v. *Morley,* 11 Ves. 12; *Craythorne* v. *Swinburne,* 14 Ves. 159; *Mayhew* v. *Crickett,* 2 Swanst. 185; *Pledge* v. *Buss,* Johns. (V. C.) 666; *King* v. *Baldwin,* 2 Johns. Ch. 554; *Mathews* v. *Aikin,* 1 N. Y. 595; *Swan* v. *Patterson,* 7 Md. 164.

In the answers, as we have seen, and also in the testimony on the part of the defendants, it is claimed that the certificates pledged as security for the payment of the $600 note, guaranteed by Willoughby, belonged to Mankey, and that they had been pledged by Willoughby for the payment of the note in violation of the agreement by which they had been placed in the hands of Clegg by Mankey. And while it is averred that Willoughby had knowledge of that agreement, the proof fails to show that he knew anything about the terms upon which the certificates had been delivered to Clegg by Mankey. That the certificates belonged

to Mankey may be conceded, but that fact does not operate to conclude the right against Willoughby, the guarantor of the note, for which the certificates were pledged as collateral security.

It is not indispensable, says Judge Story, in his work on Bailments, Sec. 291, that the pledge should belong to the pledgor; it is sufficient if it is pledged with the consent of the owner. And even without the consent of the owner, the thing may, as between the parties, be completely deemed a pledge, so that the pledgor himself cannot reclaim it except on discharging the obligation. If Clegg abused the confidence that was reposed in him by Mankey, in not using the certificates in the way and for the purpose only for which they were obtained, and in not returning them to the owner, after they were so used, that was an affair to be settled and adjusted as between Mankey and Clegg. The certificates would appear to have been lawfully in the hands of Clegg, with the assignment of Mankey indorsed thereon in blank, without any restriction of the use that might be made of the certificates, with an express authority to have made upon the books of the syndicate a transfer of all right and interest evidenced by the certificates. Phillips, with whom the certificates were pledged as collateral security, was well justified in receiving and relying upon the certificates, and when the note was paid or taken up by the executrix of the surety or guarantor, Phillips, the creditor, was fully justified, indeed, required by the settled rules of law to deliver up to the surety the note, together with the certificates, as means of indemnity to the surety. *Jarvis* v. *Rogers,* 13 Mass. 105; *Same Case,* 15 Mass. 389; *Talty* v. *Freedman's Savg. and Trust Co.,* 93 U. S. 321.

If the defense set up by Mankey and Clegg had been clearly made out by competent proof, that the money obtained on the note to Phillips for $600 had been received and applied by Willoughby to his own use, or that he had received money with which to take up the note when due, but failed to so apply the money, such proof, of course, would be a full answer to this proceeding by the executrix

of Willoughby, and would require the bill to be dismissed. And, in such case, having obtained the certificates upon the payment of the note, they could not be retained to indemnify the estate of Willoughby for any other liability that he may have incurred for Clegg. The *onus* of proof, however, is upon the defendants, and they are required to make out the defense by clear and definite proof, in order to overcome the *prima facie* case shown on the part of the complainant. The testimony of Jackson, a partner of Clegg, a witness produced on the part of the defendants to prove that the money received on the note for $600 from Phillips was paid over to Willoughby would appear to be directly in conflict with the testimony of Phillips; and besides, the testimony of Jackson seems to be inconsistent with much of the most material evidence of the case. Indeed, the proof on the part of the defendants, when considered as a whole, is far from satisfactory to establish the defense. It is altogether too loose, indefinite, and conflicting to warrant any certain conclusion therefrom. The court below passed a decree granting the relief prayed by the bill; and upon default of the redemption of the certificates by the defendants, or one of them, that said certificates should be sold and the proceeds of such sale be applied under the direction of the court. We find no error in the decree, and it must, therefore, be affirmed; and it is so ordered.

*Decree affirmed.*

A motion for a rehearing filed on behalf of the appellants March 16, was denied April 7, 1903.