JENNIE M. THOMPSON et al., as Executors, etc., Appellants, *v.* THE ST. NICHOLAS NATIONAL BANK, Respondent.

In an action to recover possession of certain railroad bonds which the complaint alleged were the property of plaintiff and of which defendant had become wrongfully and illegally possessed, these facts appeared: T., the original plaintiff, transferred to C. & M., stock brokers, the bonds in question, to be held as margins on his stock transactions. C. & M. deposited them with defendant, a national bank, as security for any indebtedness, present or future, by them to defendant, with authority to sell at public or private sale, without notice, and apply the proceeds in payment of such indebtedness, and on the faith of such deposit defendant promised to pay the checks of C. & M. to a specified amount; simultaneously therewith it certified checks to that amount and on the same day paid them to the holders thereof. On the next business day C. & M. failed, owing defendant a balance of account. Thereafter T. served

written notice upon defendant to the effect that the bonds were his property, forbidding its parting with the same except by his order, and demanding an account showing what lien plaintiff claimed to have thereon; this defendant did not furnish. No offer to pay such balance or request to redeem the bonds, or admission of any rights of defendant therein was made by T. Defendant subsequently sold the bonds, realizing less than the balance unpaid. *Held,* that a verdict was properly directed for defendant; that plaintiffs, to maintain the action, were bound to show that no title passed to defendant by the transfer to it, or that at some time prior to the commencement of the action they had become entitled to the possession; that the bank acquired a valid title, and plaintiffs failed to show a right of possession, as they could only establish such a right by proof that the debt for which the bonds were pledged had been wholly paid, or that tender had been made of a sufficient sum to discharge it.

Plaintiff claimed that the certification of the checks without an equivalent amount of money on deposit, being in violation of the National Banking Act (U. S R. S. § 5208), no valid debt was created thereby, and so defendant did not become a *bona fide* holder of the bonds. *Held,* untenable; *first,* that the act fixes and limits the penalty for its violation, and instead of invalidating, expressly affirms the validity of the certification; *second,* that the provision had no application to the question, as the contract of the bank with C. & M. was simply to protect the checks of the firm, *i. e.,* to loan the amount specified and pay it out on its check, not to certify them; that this contract was lawful and its legality was not affected by the certification.

Also, *held,* the application by defendant of deposits made by C. & M. on the day the agreement was made to the payment of the prior indebtedness of the firm, instead of to the indebtedness created by the payment of the certified checks, was proper.

In the absence of express application of payments by the parties, the law applies them to the earliest items of the account.

*Mem.* of decision below, 47 Hun, 621.

(Argued March 21, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 8, 1888, which denied a motion for a new trial and directed judgment for defendant on a verdict.

This action was brought to recover possession of certain railroad bonds.

The material facts are stated in the opinion.

*Lewis Sanders* for appellants. If a person, when goods are demanded of him, rests his refusal on grounds quite

distinct from any claim of lien, he cannot afterwards put forth a claim of lien as his justification for his refusal. (1 Addison on Torts, 540; *Dous* v. *Morewood*, 10 Barb. 187; *Dirks* v. *Richards*, 4 Man. & G. 554; *Weeks* v. *Goode*, 6 C. B. [N. S.] 369; *Altersol* v. *Jester*, 13 Ark. 537.) The money being paid in by Capron & Merriam, and credited by the bank to the general account of Capron & Merriam, under the doctrine of appropriation of payments, the law will, in the absence of applications by either debtor or creditor, apply the money in discharge of and relief of the surety, Mr. Thompson, whose bonds were held as collateral for these certifications. (*Smith* v. *Lloyd*, 11 Leigh [Va.] 517; *Terhune* v. *Colton*, 12 N. J. Eq. 238; 2 Daniels Neg. Inst. [2d ed.] 256; *U. S.* v. *Bradbury*, 2 Ware, 149; *Hill* v. *Braxton*, 1 Washington [Va.] 133; *Bussey* v. *Gant, Admr.*, 10 Humph. 241; *Moore* v. *Ryder*, 65 N. Y. 441.) Plaintiff can be holden only to extent of actual advances made on the faith of bonds in suit. (*Gould* v. *F. L. & T. Co.*, 23 Hun, 322; *Hazard* v. *Fiske*, 83 N. Y. 298.) The burden of proving a purchase in good faith and for value devolved upon the defendant after it was established that the notes had been surreptitiously put in circulation and diverted from the purpose for which they had been delivered to Winslow. (*D. S. Machine Co.* v. *Best*, 105 N. Y. 64; *Weaver* v. *Barden*, 49 id. 290; *Stevens* v. *Brennan*, 79 id. 258; *Howland* v. *Woodruff*, 60 id. 79; *Dusenbery* v. *Hulbert*, 59 id. 546.) Defendant did not acquire the bonds in the ordinary course of business. (U. S. R. S. § 5208; 22 U. S. Stat. at Large, Laws 1882, chap. 290, 166, § 13; *Felt* v. *Heye*, 23 How. Pr. 361, 362; 1 Daniel on Neg. Inst. [2d ed.] 625, 626, §§ 781, 781 a, 787; 11 id. §§ 1500–1502; *Roberts* v. *Stall*, 37 Conn. 205; *Bank of Rome* v. *Village of Rome*, 19 N. Y. 24; *Everton* v. *Nat. Bk. of Newport*, 66 id. 22; *Tallmadge* v. *Pell*, 7 id. 346; *Dewitt* v. *Brisbane*, 16 id. 514; *Leavitt* v. *Palmer*, 3 id. 19.) The prohibition against national banks loaning on the security of their stock has been sought to be evaded in many forms, but always without success. (U. S. R. S. § 5201; *Bank* v. *Lanier*, 11 Wall. 374;

*Conklin* v. *Nat. Bk.*, 45 N. Y. 655.)   A contract made in violation of a statute is void, and it is immaterial that it is not so declared in the statute itself.   (*Crocker* v. *Whitney*, 71 N. Y. 170 ; *Pennington* v. *Townsend*, 7 Wend. 280, 281 ; *Hallett* v. *Novian*, 14 Johns. 273, 290 ; *Thalimer* v. *Brinkerhoff*, 20 id. 397 ; *Bank* v. *Owens*, 2 Peters, 538 ; *Griffith* v. *Wells*, 3 Denio, 226 ; Story on Con. §§ 613, 614 ; *Barton* v. *P. J. & U. F. P. R. Co.*, 17 Barb. 404 ; *Ferndon* v. *Cunningham*, 20 How. 154 ; *Best* v. *Bender*, 29 id. 489 ; *Swords* v. *Owen*, 43 id. 185.)   The manufacture of the locks or contract to sell them to the Seal Lock Company, were not acts immoral in themselves or forbidden by any statute, neither *mala in sese* nor *mala prohibita*, so as to make the contract illegal and incapable of being the foundation of an action.   (*Earl of Shrewsbury* v. *N. S. R. Co.*, L. R., 1 Eq. 593 ; *Taylor* v. *C. & M. R. Co.*, L. R., 2 Exch. 356 ; *Bissell* v. *M. C. R. Co.*, 22 N. Y. 258 ; *Whitney Arms Co.* v. *Barlow*, 63 id. 68, 69 ; *Bissell* v. *M. S. & N. I. R. R. Co.*, 22 id. 269, 270, 273 ; *Tracy* v. *Talmadge*, 14 id. 191 ; *Penn Co.* v. *S. L. & A. R. R. Co.*, 118 U. S. 317 ; *Thomas* v. *R. R. Co.*, 101 id. 86.)   A demand having been made before the sale, after the sale no demand was necessary.   (*People* v. *Bank*, 75 N. Y. 564 ; *Trow* v. *Shannon*, 78 id. 453.)   The burden of proof is on the holder of negotiable paper negotiated in fraud of rights of the owner to show that he acquired it in good faith and for value.   (*Wilson* v. *Rocke*, 58 N. Y. 642 ; *First Nat. Bk.* v. *Green*, 45 id. 301 ; *Nickerson* v. *Ruger*, 76 id. 282.)   Defendant was not subrogated to the rights of Capron & Merriam. (*Felt* v. *Heye*, 23 How. 361 ; *Black* v. *Bogart*, 65 N. Y. 601 ; *Chapman* v. *Brooks*, 31 id. 75.)

*William Allen Butler* for respondent.   A holder for value of bonds like those in suit is unaffected by want of title in the party from whom he takes them, unless he acts in bad faith ; and the burden of proof on the question of bad faith is on the party who assails the possession.   (*Murray* v. *Lardner*, 2 Wall. 110, 121 ; *Welch* v. *Sage*, 47 N. Y. 143 ; *Thompson* v.

*St. Nicholas Bk.*, 9 N. Y. S. R. 363.)   A national bank may take personal security for future advances.   (*Nat. Bk.* v. *Whitney*, 103 U. S. 99.)   As section 5208 of the United States Revised Statutes does not declare void a contract to secure a debt arising from the certifications prohibited by its terms, the illegality of this contract cannot be maintained.   (*Royal British Bk.* v. *Turquand*, 6 Ellis & B. 325 ; *Comrs of Knox Co.* v. *Aspinwall*, 21 How. [U. S.] 539 ; *Stoney* v. *Am. Life Ins. Co.*, 11 Paige, 635 ; *Bk. of Ashland* v. *Jones*, 61 Ohio St. 145 ; *Bridgewater & U. P. R. Co.* v. *Robbins*, 22 Barb. 662, 667 ; *Verona Cheese Co.* v. *Murtaugh*, 50 N. Y. 314 ; *Bonnell* v. *Griswold*, 80 id. 128 ; *Benton* v. *Wickwire*, 54 id. 226, 228.)   The statute being highly penal, cannot be enlarged by construction or implication, or its penalty imposed except as the plain language of the section requires it.   (*Whitaker* v. *Masterton*, 106 N. Y. 277, 280.)   Where the provisions of the national banking statutes prohibit certain acts by banks, or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the government, and cannot be availed of by private parties.   (*Nat. Bk. of Xenia* v. *Stewart*, 107 U. S. 676 ; *Gold Mining Co.* v. *Nat. Bk.*, 96 id. 640 ; *Nat. Bk.* v. *Whitney*, 103 id. 99 ; *Reynolds* v. *Crawfordsville Nat. Bk.*, 112 id. 405 ; *Fortier* v. *N. O. Bk.*, Id. 439, 451.)   Where acts, otherwise lawful, are prohibited by statute to corporations, private parties cannot avail of the prohibition to invalidate transactions which contravene the statute.   The prohibition and prescribed penalty may render the corporation amenable to the state, but a private party cannot take advantage of them.   (*Atlantic State Bk.* v. *Savery*, 82 N. Y. 291 ; *Jones* v. *G. & I. Co.*, 101 U. S. 622, 629 ; *Nat. Bk.* v. *Whitney*, 103 id. 99.)   In replevin or trover the plaintiff must show possession in himself or an existing right to take immediate, actual possession of the property.   (*Clements* v. *Yturria*, 81 N. Y. 285, 290 ; *Hull* v. *Carnley*, 11 id. 501 ; *Bradley* v.

*Copley*, 1 C. B. 685; *Talty* v. *F. S. & T. Co.*, 93 U. S. 321, 325; *Bakeman* v. *Pooler*, 15 Wend. 637.) The cases in which the plaintiff has been permitted to recover in part, or to redeem securities wrongfully pledged, were not, as here, replevin based on an alleged original wrongful detention. (*Hazard* v. *Fiske*, 83 N. Y. 287, 299; *McNeil* v. *Tenth Nat. Bk.*, 46 id. 325; *Gould* v. *F. L. & T. Co.*, 23 Hun, 322.)

RUGER, Ch. J. The uncontroverted proof on the trial established the following facts, viz.: That on the 18th day of April, 1874, Capron & Merriam, stock brokers in New York, deposited with the defendant, a national bank, ninety-three coupon railroad bonds, payable to bearer, of the par value of $1,000 each, as security for any indebtedness which they then were, or might become liable for to such bank, with authority to sell such securities upon default, either at public or private sale, without advertisement or notice, and apply the proceeds in payment of such indebtedness. Upon the same day, and upon the faith of such deposit, the defendant promised to pay Capron & Merriam's checks in favor of third parties, to the amount of upwards of $236,000, and simultaneously certified checks to that amount, which were presented by and paid to the holders thereof by it during the same day. On Monday, the 20th of April, 1874, Capron & Merriam failed, owing the defendant a balance of account of about $72,000, arising out of the transactions of the 18th of April, 1874. This sum was made up by charging Capron & Merriam with the amount of the checks certified and paid on the eighteenth of April; certain other checks paid through the Clearing House on the morning of that day, and a balance of account remaining unpaid upon the transactions of the preceding day, and deducting therefrom the amount of their deposits, being about $211,000, made on April eighteenth. On the 5th of May, 1874, the plaintiff's testator served a written notice upon the defendant to the effect that the bonds in question were his property, and forbidding them from parting with the same, except by his order, and demanding an account showing what

lien the defendant claimed to have on the bonds.  Upon the trial the plaintiffs proved that their testator, previous to April 18, 1874, owned such bonds, and on that day and the day previous, transferred them to Capron & Merriam to be held as margins on his individual stock transactions.

No payment upon the indebtedness of Capron & Merriam to the defendant was ever made, except some small sums received by way of interest, and the receipts from sales of the bonds in question, and others held as security for it.  Such receipts never amounted to the sum of the indebtedness. No offer to pay such indebtedness was ever made by the plaintiffs' testator, or request to redeem the bonds in suit, or admission of any right in the bonds by the defendant.  The defendant never, in terms, refused to render an account of its transactions with Capron & Merriam to the plaintiffs' testator, but it did omit to send a written statement thereof in response to his notice requiring the same.  The defendant subsequently sold all of the securities held by it, either at public or private sale, using its best efforts to obtain as large a price as possible for them, and realized less than the amount of the debt due to it from Capron & Merriam.  The plaintiffs' testator, in October, 1879, claiming to be the owner of the bonds, demanded of the defendant their unconditional delivery to him, and in April, 1880, brought this action to recover their possession.  Each party, on the close of the evidence, requested the direction by the court of a verdict, and the court granted the request of the defendant and ordered a verdict for it.  To this direction the plaintiffs excepted.

The plaintiffs also asked to go to the jury, in case the court should refuse to direct a verdict for them, upon certain grounds stated, upon the fact whether the defendant was not liable for the full value of forty-eight certain bonds " which they sold without notice to plaintiffs' intestate, and he is entitled to have applied on the bank's account the highest market-price which they would realize in extinguishment of the bank's claim, leaving the rest of the securities free and clear."  This was refused and the plaintiffs excepted.  The court ordered

the exceptions to be heard in the first instance at the General Term.

There were some exceptions to the admission or rejection of evidence by the court, taken by the plaintiffs during the trial; but none are referred to in the appellants' brief on the argument before us, and they were all unimportant. Neither has the exception to the refusal of the court to permit the plaintiffs to go to the jury, on the alleged question of fact, been argued or presented on the appeal. The refusal of the court was so obviously proper that it is unnecessary to spend time in discussing it.

It thus appears that the only exception in the case is to the direction of the court requiring the jury to find for the defendant. This exception presents the question whether, upon all of the facts of the case, the plaintiffs had established a right to demand the surrender of such bonds, or any part thereof, by the defendant to their testator. We think there was no error in the disposition made of the case by the trial court. The complaint alleges the ownership of the bonds by the plaintiffs; that on or about the 18th day of April, 1874, the defendant became wrongfully and illegally possessed of the same; that upon demand it had refused to deliver them up to plaintiffs, and a demand of judgment for the return of the bonds, and in case that could not be had a judgment for their value. The answer denied all of the allegations of the complaint except its own incorporation and a demand of the bonds by the plaintiffs, and for a second defense alleged the transfer of said bonds to it by Capron & Merriam as security for certain loans and demands made to and for said Capron & Merriam; the non-payment of the debt for which they were pledged, and a sale of such securities pursuant to the agreement under which they were pledged. The issue in the case was thus a plain one. The plaintiffs claimed to be the absolute owners of the bonds unaffected by any right which the defendant might assert in respect to them; and to maintain the action they were bound to show that no title passed to the defendant by their transfer, or that at some time prior

to the commencement of the action they had become entitled to the possession of such bonds, or some part thereof. (*Duncan* v. *Brennan*, 83 N. Y. 487; *Clements* v. *Yturria*, 81 id. 285; *Redman* v. *Hendricks*, 1 Sandf. 32; *Ingraham* v. *Hammond*, 1 Hill, 353; *Pattison* v. *Adams*, 7 id. 126.) Assuming the validity of the transaction by which the defendant became possessed of the bonds, this could be effected only by proof that the debt for which they were pledged had been wholly paid, or the tender of a sufficient sum to discharge such debt. (*Lewis* v. *Mott*, 36 N. Y. 395; *Bakeman* v. *Pooler*, 15 Wend. 637; *Talty* v. *Freedman's Sav. Bk.*, 93 U. S. 321.) This, confessedly, the plaintiffs did not show. Various alleged equitable claims have been presented by the appellants as affecting the determination of this appeal; but, admitting their existence, the form of the action does not permit their consideration here. The action was replevin *in cepit* and predicated upon the alleged wrongful taking by the defendant of the bonds in question from Capron & Merriam. The application of the deposits of the eighteenth day of April to the extinguishment of the unpaid balance of account existing against Capron & Merriam on the morning of that day, instead of the indebtedness created by the payment of the certified checks, was properly made and could not be questioned by the plaintiffs. The demand upon which they were applied was a running account comprised of a number of items accruing at different times, all equally secured by the collaterals held by the defendant, but which were always insufficient to satisfy the whole debt. Under such circumstances, in the absence of any express application of payments by the parties, the law applies them to the earliest items of the account. (*Truscott* v. *King*, 6 N. Y. 147; *Harding* v. *Tifft*, 75 id. 461; *Webb* v. *Dickinson*, 11 Wend. 62; *United States* v. *Kirkpatrick*, 9 Wheaton, 720; Munger on Payments, 102.)

The main contention of the appellants is, that the transaction by which the defendant certified checks for Capron & Merriam, without having an equivalent amount of money on deposit to meet them, was a violation of section 5208 of the

United States Revised Statutes, and that no valid debt against Capron & Merriam was created thereby; or, in other words, that the defendant did not become a *bona fide* holder of such bonds by reason of payments made in pursuance of such alleged illegal and prohibited arrangement. The statute is as follows: "It shall be unlawful for any officer, clerk or agent of any national banking association to certify any check drawn upon the association unless the person or company drawing the check has on deposit with the association at the time such check is certified an amount of money equal to the amount specified in such check. Any check so certified by duly authorized officers shall be a good and valid obligation against the association, but the act of any officer, clerk or agent of any association in violation of this section shall subject such bank to the liabilities and proceedings on the part of the comptroller as provided for in section fifty-two hundred and thirty-four."

It will be seen that the statute affirms the legality of the contract of certification, and expressly prescribes the consequences which shall follow its violation. It, therefore, appears that, so far from making the contract of certification void and illegal, its validity is expressly affirmed, and the consequences which follow a violation are specially defined, and impliedly limit the penalty incurred to a forfeiture of the bank's charter and the winding up of its affairs. There is a clear implication from this provision that no other consequences are intended to follow a violation of the statute. It would, indeed, defeat the very policy of an act intended to promote the security and strength of the national banking system, if its provisions should be so construed as to inflict a loss upon them, and a consequent impairment of their financial responsibility.

The decisions of the Supreme Court of the United States are uniform in giving this construction to the provisions of the national banking act. (*Nat. Bk. of Xenia* v. *Stewart*, 107 U. S. 676; *Nat. Bk.* v. *Matthews*, 98 id. 621; *Nat. Bk.* v. *Whitney*, 103 id. 99.) The principle decided in *National Bank of Xenia* v. *Stewart* seems to be in point. There the bank made a loan upon the security of shares of its own stock,

which loan was prohibited by section 5201 of the United States statutes. After the debt became due the bank sold the shares and applied their proceeds to the payment of the debt. The administrators of the debtor sued to recover the proceeds of the sale, and it was held that they could not recover, as the contract had been executed.

In *National Bank* v. *Matthews*, the court held that a mortgage on real estate taken to secure an existing indebtedness and for future advances, was a valid security in the hands of the bank, although, by sections 5136 and 5137 of the Revised Statutes of the United States, its was impliedly prohibited from taking such securities. It was held that the government alone was entitled to prosecute for the offense committed by the bank in taking a prohibited security, Justice SWAYNE saying : " The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other, contemplated by congress." The same principle was held by this court in the *Atlantic State Bank* v. *Savery* (82 N. Y. 291). But we are further of the opinion that the section has no application to the question here, which concerns the relations between Capron & Merriam and the defendant alone. By the deposit in question Capron & Merriam secured the promise of the bank to protect their checks of a certain day for a specified amount. The certification of these checks was entirely aside from this agreement; that was a contract between the bank and the anticipated holders of the checks; Capron & Merriam had received the consideration for their pledge when the bank agreed with them to honor their checks. This would have been equally effectual between these parties without any certification. That act was simply a promise to such persons as might receive the checks that they should be paid on presentation to the bank in accordance with the previous agreement with Capron & Merriam. The legal effect of the agreement was that the bank should loan a certain amount to Capron & Merriam, and pay it out on their checks to the persons holding them. It was entirely lawful for the bank to contract to pay Capron & Merriam's checks, and it

did not affect the legality of that transaction that they also represented to third parties that they had made such an agreement and would pay such checks. Capron & Merriam cannot dispute their liability for the amount paid out in pursuance of such an agreement, and neither can any other party standing in the shoes of the bank depositor. The fact that the bank, in connection with an agreement to pay such checks, had also promised third parties to pay them, could not invalidate the liability previously incurred, or impair the security which had previously been given to it upon a valid consideration. The fact of the certification was entirely immaterial in respect to the liability incurred by Capron & Merriam to the bank.

We have been unable to discover any evidence in the case impairing the title to the bonds acquired by the bank through their transfer by Capron & Merriam to it. The purpose for which they were transferred by Thompson contemplated their transfer and sale by Capron & Merriam to third persons, and the bank acquired a valid title to them by such transfer. The evidence showed that the transaction between Capron & Merriam and the bank was in the ordinary course of business pursued by the bank, and that it received the bonds in good faith for a valuable consideration. Within all authorities, this gave it good title to such securities. (*Welch* v. *Sage*, 47 N. Y. 143; *Murray* v. *Lardner*, 2 Wall. 110; *Davis Sewing Machine* v. *Best*, 105 N. Y. 59.)

The bank having acquired a valid title to the bonds, was authorized to deal with them for the purpose of effecting the object for which they were transferred by Capron & Merriam. (*Talty* v. *Freedman's Savings and Trust Co.*, 93 U. S. 321.) Its right to hold the bonds continued so long as any part of the debt against Capron & Merriam remained unpaid. The plaintiff's intestate could, undoubtedly, at any time, have established his equitable right to a return of the bonds and procured their surrender by paying the amount for which they were pledged, but this he not only refrained from doing, but impliedly denied any right in the defendant by demanding

the unconditional surrender of the bonds. This he never became entitled to and, of course, is not authorized to recover their possession in this action.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.