FREDERICK H. SMITH, JR., Appellant and Respondent, *v.* FRANCIS W. SAVIN and ELISHA W. VANDERHOOF, Appellants, and JOHN WHEELER, as Assignee and as Receiver of ORLANDO M. BOGART & Co., Appellant.

*Securities wrongfully pledged by the agent of the undisclosed owner, and converted by the pledgee — right of the owner to ratify the pledge, and sue the agent's pledgee for the conversion — election of remedies.*

An undisclosed principal has a right to enforce the contract of his agent in respect to his property.

An undisclosed owner of securities which have been placed in the possession of his agent and wrongfully pledged by the agent to a third party, and converted by the pledgee, may, on ratifying the pledge made by his agent, maintain an action for the conversion of his property by the agent's pledgee.

When a pledgee violates the terms of his pledge and converts the pledge, the pledgor has an immediate right of possession and an immediate right of action for the pledge, to which claim of possession the pledgee may offset the amount actually due him.

If a stockbroker, clothed with the apparent ownership of securities placed in his possession by the real owner thereof, wrongfully pledges the same with a third party as security for a loan made to him by the pledgee, and the pledgee wrongfully sells the securities and applies the proceeds on the loan, the owner may adopt the act of his broker, and maintain an action for conversion against the pledgee, in which he may recover the market value of his securities within a reasonable time after his discovery of the conversion, less the amount actually due the defendant for money advanced by him on the securities.

If the complaint, in an action originally brought in equity to reach the proceeds of a sale of personal property, is amended, on condition of the payment of costs, which are accepted by the defendant, so that it becomes in effect a complaint for the conversion of the property sold, the defendant cannot, on appeal from a judgment recovered by the plaintiff on the amended complaint, invoke the doctrine of the election of remedies, as an objection to the right of the plaintiff to recover as for a conversion.

APPEALS, by all the parties to the action, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 26th day of November, 1892, upon the report of a referee.

*T. D. Kenneson,* for defendant Savin and another, appellants.

*John Notman,* for defendant Wheeler, appellant

*Dennison & Hall,* for plaintiff, appellant and respondent.

VAN BRUNT, P. J.:

This action was begun as one in equity to reach a specific fund in the hands of the defendants Savin & Vanderhoof, and was tried before a referee, and from the judgment entered upon such referee's report, an appeal was taken to the General Term, where the judgment was reversed and a new trial ordered. Subsequently the plaintiff gave notice of motion for leave to serve an amended complaint, which was granted upon the condition that he pay before the service of such amended complaint to the attorneys of the defendants all of their costs and disbursements and ten dollars costs of motion, which costs were taxed and duly paid by the plaintiff. He thereupon served his amended complaint which, upon the trial of the action, was claimed to be for conversion, but to which view the pleader, at the time of drawing the same, did not absolutely wish to commit himself. Answers to such amended complaint were served, and the issues thus framed were referred to a referee, who reported partially in favor of the plaintiff, and from the judgment thereupon entered these appeals are taken.

In the determination of the questions involved it does not seem to us that it is necessary to state but a very few of the facts established upon the trial, and those are substantially conceded upon the record.

It appears that the defendants Savin & Vanderhoof were carrying on business as stockbrokers in the city of New York, and that the firm of O. M. Bogart & Co. were also carrying on in said city the business of bankers and brokers. With this latter firm the plaintiff had been dealing for a number of years. Prior to and including the 1st of May, 1884, as security for any overdrafts which the plaintiff might make upon said firm, he deposited with them a large number of bonds and a certificate for 100 shares of Missouri Pacific stock. On the 8th of May, 1884, Bogart & Co. unlawfully, and without the knowledge of the plaintiff, pledged fifty-five United States bonds belonging to the plaintiff with the Central Trust Company of New York city, and received the sum of $55,000 from said company on the faith thereof. On the 13th of May, 1884, Bogart & Co. borrowed on call from the defendants Savin & Vanderhoof, the sum of $50,000, and deposited as collateral various shares of stock, including the 100 shares of Missouri Pacific stock belonging to the plaintiff, all of which stocks, except said 100 shares, were the property of Bogart & Co. Upon said day the plaintiff was apparently indebted to Bogart & Co. for and on account of overdrafts in the sum of $43,170.79. At or prior to ten o'clock of the 14th of May, 1884, Bogart & Co. made a general assignment for the benefit of their creditors to the defendant Wheeler, who accepted the trust, and duly qualified as such assignee. Upon said morning, after the execution and delivery of the assignment of Bogart & Co. and after the defendants Savin & Vanderhoof had notice of such assignment, the defendant Savin made a demand upon O. M. Bogart, Jr., who had been a clerk, but who was not a member of the firm of O. M. Bogart & Co., for the repayment of said sum of $50,000. He made no demand upon any member of the firm, or upon said assignee. Not receiving payment upon the demand made, and within a few minutes thereafter, he sold at the stock exchange through private brokers all the securities deposited with them as collateral for said loan of $50,000, which sale took place within half an hour after the return of Savin to such stock exchange rooms. No notice of intention to sell was served upon the firm of Bogart & Co. or upon Wheeler, as assignee, or upon the plaintiff before such sale took place.

The proceeds realized by Savin & Vanderhoof from the sale of

the securities, other than the 100 shares of Missouri Pacific stock, after deducting one-sixteenth of one per cent as commissions, amounted to $45,975, and the amount due upon the loan of $50,000, made by them to Bogart & Co. at the time of the sale, was $50,006.94. The proceeds realized from the sale of the 100 shares of Missouri Pacific stock, after deducting one-sixteenth of one per cent, amounted to $7,543.50. In the latter part of May, the plaintiff first learned that the defendants, Savin & Vanderhoof, claimed to have sold said stock on the 14th of May, 1884. The value of the stock on the 21st of June, 1884, which the referee finds to be within a reasonable time of the discovery by the plaintiff of this sale by Savin & Vanderhoof, was $100 per share; and the referee gave judgment in favor of the plaintiff against Savin & Vanderhoof for the sum of $5,968.06, being the difference between $10,000, the market value of said stock on the 21st of June, 1884, and $4,031.94, the amount remaining unpaid to Savin & Vanderhoof after the application to the debt of Bogart & Co. of the proceeds of the sales of all the securities excepting this Missouri Pacific stock.

From this judgment all the parties appeal. The defendants, Savin & Vanderhoof, claim that this action, being for conversion, cannot be maintained; that no relations existed between the plaintiff and them by which their act in selling this Missouri Pacific stock was wrongful as against him; that whatever rights Bogart & Co. may have had because of the manner of the sale, the plaintiff was not subrogated to any such rights, nor could he enforce the same; and that a surety (and it is sought to treat Smith as a surety because of his ownership of this stock) cannot enforce actions upon behalf of his principal.

It seems to us that the true relations of the parties have been entirely overlooked by the counsel for both parties. It seems to be clear that there is no subrogation of Smith to Bogart & Co.'s rights, and that he is not by this action seeking to enforce any rights of Bogart & Co. But he is seeking to enforce a right which accrued to him as the real owner of the stock pledged by Bogart & Co. The pledge by Bogart & Co., as far as the plaintiff was concerned, of this stock as collateral to the loan of Savin & Vanderhoof, was clearly a wrongful act, for which the plaintiff could have called Bogart & Co. to account. Or he might adopt the act of Bogart &

Co., which latter he has done by the action brought against Savin & Vanderhoof, because he had put it in the power of Bogart & Co. to treat this stock as their own and procure money upon it. And by reason of the holding out of Bogart & Co. as the owners of this stock, Savin & Vanderhoof, as far as they had advanced their money upon it, were to be protected, but no further. The undisclosed principal has a right to enforce the contract of his agent in respect to his property, being bound only by the contracts of that agent in respect thereto. Such being the relations of the parties, and Savin & Vanderhoof having converted these securities as against Bogart & Co., the plaintiff had a right to pursue Savin & Vanderhoof to procure the redress of wrongs which had been suffered in respect to that property. Bogart & Co., or their assignee, would have a right of action against Savin & Vanderhoof for the conversion of these securities, amongst which were the 100 shares of Missouri Pacific belonging to the plaintiff. As has been said, the plaintiff had a right to adopt the contract of Bogart & Co. in respect to his property, and if Savin & Vanderhoof has broken this contract, the plaintiff, as the undisclosed principal, had a right to redress in respect to the property owned by him. He, therefore, brings this action against Savin & Vanderhoof for the conversion of this stock, it having been sold without any demand upon Bogart & Co. for the repayment of the loan or any notice given of the time and place of sale. We have not noticed in this statement the claim in regard to the rules of the stock exchange, for they seem to be entirely immaterial.

But it is urged by the defendants that the case of *Thompson* v. *St. Nicholas Nat. Bank* (113 N. Y. 325) is in conflict with this view. On the contrary, it is in entire harmony with the principles here laid down and is an authority in support thereof. In that case the court held that the bank having acted in pursuance of and under the power conferred by the contract of pledge, it was immaterial what ulterior rights there were of which they had no notice at the time of the making of the pledge. The waiver of right of notice of the time and place of sale and personal demand was as much a part of the contract of pledge in that case as was the pledge itself, giving a right to sell. And in pursuance of the express authority conferred by the agreement of pledge, the bank acted, and the court held that

the sale being in accordance with the contract between the pledgee and subpledgee, it was not illegal or in violation of the original pledgor's rights, manifestly because the original pledgor or the owner of the stock as against the subpledgor, could not have varied the terms of the contract by simply giving notice of ownership or interest. If there is one thing well settled it is that a *bona fide* holder of a negotiable security without notice, is entitled to protection in everything which he gives upon the faith of the pledge, and that he has the right to sell in a particular way, or under particular circumstances, is as much a part of the right secured by the pledge as the money actually advanced. Now what were the relations between the plaintiff, Bogart & Co., and Savin & Vanderhoof, in consequence of the wrongful conversion by Savin & Vanderhoof of the stock pledged by Bogart & Co. ? The plaintiff, by ratifying the pledge of Bogart & Co., had a right to maintain his action for the conversion of his property by the pledgee of his agent. And all that Savin & Vanderhoof, the pledgees, could claim was that they should not be placed in a worse position when the undisclosed principal brought his action than they would have been had such principal not been disclosed, and the agent had brought it in his own name. If Bogart & Co. had brought this action they probably would have been entitled to recover more than has been recovered here. At least they would have been entitled to recover the market value of this stock which has been converted, less the balance due upon the account, and that is all that the plaintiff recovered. The amount which was due upon the account was offset against the market price of the stock taken at a reasonable time after the discovery of this conversion.

But it is claimed by the defendants that at the time of this conversion the plaintiff was not entitled to the possession of the stock because the loan by Savin & Vanderhoof to Bogart & Co. had not been paid. They might have gone farther, perhaps, and said, because at the time of this conversion Bogart & Co. had a right to hold this stock because of the overdrafts of the plaintiff. But the plaintiff paid these overdrafts, and was entitled to his stock from Bogart & Co. who had wrongfully placed it in this loan. It is a familiar principle that when a pledgee violates the terms of his pledge and converts the pledge, the pledgor has an immediate right

of possession and an immediate right of action for the pledge, to which claim of possession the pledgee may offset the amount actually due him, and even for a long period of time this was denied him, but that seems to be the rule at the present day.

Bogart & Co.'s rights seem to be beyond question, and the plaintiff seems equally entitled to enforce the rights which belong to him because of the wrongs done to his agent in respect to his property.

But it is said that in consequence of the nature of this action when it was first commenced, there has been an election of remedies by which the plaintiff has lost the right to pursue this particular remedy ; that having sought originally to reach the proceeds of the sales, he adopted the sales of Savin & Vanderhoof, and cannot now be heard to claim that they are wrongful.

Whatever might have been the rule had two separate actions been brought, one to reach the proceeds of the sale and one for the conversion, the first of which had proceeded to judgment, no such doctrine can be invoked in a case where there has been but one action, and whatever change has taken place has been the result of an amendment to the complaint in that action. The amended complaint takes the place of the original complaint, and the sole action which the court has judicial notice of is the action in which the complaint exists. If the court had no power to make such amendment, or it was improper that it should have been made, that question should have been determined before the parties accepted the conditions upon which such amendment was allowed. It is too late now to appeal in this indirect manner from the order of amendment. And even a direct appeal would not lie, the defendants having accepted the costs which were made the condition of amendment. There being but one action before the court, and one judgment, we fail to see how the doctrine of election can be invoked.

There are many facts which are stated in the findings of the referee, and also established by the evidence, which it does not seem necessary to advert to. It seems to us that those which are stated show what the relations of the parties were, and that the plaintiff had a right to maintain this action in the form into which it seems to have been converted (whether wrongfully or not is entirely immaterial upon this appeal), for the concededly wrongful conversion of the plaintiff's securities by the defendants Savin & Vanderhoof.

It might very well be a question whether the defendant Wheeler was a necessary or proper party to the action, but as no such question is presented it is not necessary to discuss the same.

The judgment should be affirmed, but as all the parties are appellants, without costs.

FOLLETT and BARRETT, JJ., concurred.

Judgment affirmed, but as all the parties are appellants, without costs.