FREDERICK H. SMITH, Jr., Appellant and Respondent, *v.* FRANCIS W. SAVIN et al., Impleaded, etc., Appellants and Respondents.

Prior to May 8, 1884, plaintiff had deposited with B. & Co., who were bankers and brokers in New York city, 100 shares of corporate stock as security for any indebtedness to that firm. On that date B. & Co., without the knowledge or consent of plaintiff, pledged said stock, with other shares of stock belonging to said firm, with S. & Co. as security for a loan. The loan was made subject to the rules of the New York Stock Exchange, of which the member of each firm who negotiated it was a member. The latter firm were *bona fide* pledgees, having no knowledge that B. & Co. were not the owners of all the stock pledged. Plaintiff was not in fact at the time of the pledge equitably indebted to B. & Co. in any sum whatever, and did not thereafter become so indebted. On May 14, 1884, B. & Co. failed, and made an assignment. Plaintiff on that day learning of that fact, and also then learning for the first time that his stock had been so pledged, notified S. & Co. of his interest, and requested a statement of the amount for which his stock was held. S. & Co. refused to give any information, or to recognize plaintiff's rights. S. & Co. on the same day, without notice to plaintiff or B. & Co., and in violation of the rules of the said Exchange, sold all the stock so pledged. Plaintiff's stock sold for about $8,000, and after applying the proceeds of all the stock pledged in payment of the loan, there remained about $3,000 in the hands of S. & Co. Plaintiff did not learn of the sale of his stock until June 21, 1884, at which time the price of said stock had reached par, and the prices of the other stock sold had so advanced that if they had been held and then sold the proceeds would have paid the loan, leaving plaintiff's stock free from any claim. In an action for conversion S. & Co. claimed the right to apply the balance in their hands upon another debt due them from B. & Co. *Held*, untenable; also, that while S. & Co., as *bona fide* pledgees, were entitled to regard B. & Co. as owners of all the stock pledged until notified of plaintiff's rights, having been so notified prior to the sale, he then stood, with reference to his stock, as surety, with the right to compel them to apply the proceeds of the other stocks before resorting to his stock; that as to his stock, he had the right to require a sale in accordance with the rules of the Stock Exchange, and could treat the unlawful sale as a conversion, and after the proceeds of the sale of the other stocks had been applied to the payment of the loan, he was entitled to the highest price which his stock reached within a reasonable time after its illegal sale, and to judgment for that sum, deducting therefrom the balance due S. & Co. after such application;.

and that as plaintiff did not learn of the sale until after June twenty-first, that was a reasonable time; but *held*, in regard to the other stock sold, plaintiff was not entitled to charge S. & Co. with the highest price because of the unlawful sale, and so long as it sold at its full market value at the time of sale, he could not complain.

*Thompson* v. *St. N. Nat. Bank* (113 N. Y. 327), distinguished.

Plaintiff's original complaint alleged that the other stocks pledged by B. & Co. sold for enough to pay their debt; that his stock was sold for $9,000, for which sum he asked judgment. Plaintiff did not know, until after the cause was at issue and referred, of the time, place or manner of sale of his stock, or that it had been sold without demand of payment or notice; he thereafter went to trial; judgment was rendered against him, which was reversed on appeal. Plaintiff thereupon moved to be allowed to amend his complaint by setting up the illegal sale and asking damages; this was granted upon condition of payment of all of defendants' costs, which condition was accepted and the complaint amended. Defendants claimed that plaintiff had elected, by the form of his original complaint, to affirm the sale. *Held*, untenable; that plaintiff, having proceeded originally in ignorance of the facts, could not be held as having conclusively ratified the illegal sale; and that, under the circumstances, he did not lose the right to repudiate the sale by proceeding to trial under the original complaint.

The certificate of plaintiff's stock was issued in his name; the power of attorney to transfer was a detached paper, and plaintiff's signature thereto was not acknowledged as required by the rules of the Stock Exchange. *Held*, that S. & Co. were not thereby charged with any notice of defect of title on the part of their pledgors.

Reported below, 69 Hun, 311.

(Argued January 24, 1894; decided February 27, 1894.)

Cross-appeals from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 31, 1893, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to restrain the defendants Francis W. Savin and Elisha W. Vanderhoof, composing the firm of Savin & Co., from paying over to the defendant John Wheeler, as assignee and receiver of O. M. Bogart & Co., the proceeds of sale of 100 shares of Missouri Pacific stock, and to have the same adjudged to be the property of plaintiff.

All parties to this action have appealed from the judgment

of the General Term of the Supreme Court, which affirmed a judgment for plaintiff, entered on the report of the referee.

The plaintiff has appealed because the judgment which he has obtained was not as large in amount as he thinks he is entitled to, while the defendants Savin & Co. have appealed because they think any judgment against them is erroneous. The defendant Wheeler, the assignee of Bogart & Co., has appealed because he claims that the judgment in favor of plaintiff should have been in his favor as against defendants Savin & Co., and that the plaintiff should only share *pro rata* with the other creditors of Bogart & Co. in the amount of the recovery against Savin & Co. The facts upon which the questions arise are as follows:

For a long time prior to May 14, 1884, the plaintiff had done a banking business with O. M. Bogart & Co., a firm of bankers and brokers in the city of New York, and among other stocks the plaintiff had on deposit with that firm on the 8th of May, 1884, one hundred shares of the capital stock of the Missouri Pacific Railroad Company, of the par value of $10,000. This stock, together with stock in other corporations, had been deposited by the plaintiff with the firm as security for the payment of plaintiff's indebtedness to it, which, on the 13th of May, 1884, apparently amounted to the sum of over $48,000, but in fact the plaintiff was at no time since the 8th of May, 1884, equitably indebted to the firm of Bogart & Co. in any sum whatever.

On the date last stated Bogart & Co., wrongfully, and without the knowledge or consent of the plaintiff, pledged with the defendants Savin & Co. this scrip, then owned by the plaintiff, together with 500 shares of stock of other corporations, belonging to Bogart & Co., the whole being pledged as security for a call loan of $50,000 then obtained by Bogart & Co. from Savin & Co. The transaction was concluded between one of the members of each firm, who were also members of the New York Stock Exchange, and the loan was made subject to the rules of the Exchange.

The defendants Savin & Co. were ignorant of the fact that

Bogart & Co. were not the owners of the 100 shares of Missouri Pacific stock and the defendants were *bona fide* pledgees of all the stock as security for the amount of their loan of $50,000. On the morning of May 14th, 1884, Bogart & Co. failed and made an assignment to defendant Wheeler for the benefit of their creditors. Plaintiff learned of the fact of the assignment on the same day and soon after it was made, and he then for the first time learned that his Missouri Pacific stock had been pledged to and was in the hands of Savin & Co., to whom he immediately went and notified them of his interest in that stock, and requested from them a statement as to the amount for which they held the same. The defendants refused to recognize plaintiff's rights in the stock, and refused to give him any information whatever concerning the transaction for which it was held. This was before the stock was sold by the defendants. When they heard of the assignment and sometime in the morning of the 14th, one of the defendants made a demand at the place of business of Bogart & Co., of one who had been a clerk but who was not a member of that firm, for the re-payment of the loan, which was not complied with and thereupon the defendant Savin went to the stock exchange and within half an hour sold all the stocks which had been pledged as security for the loan. The sales were made on the floor of the exchange, partly through two private brokers and partly through Savin himself, and all the sales were without notice to Bogart & Co., or to their assignee, or to the plaintiff, and they were all made in violation of the rules of the stock exchange. The amount realized at the sales for all the stocks was about $53,000, and for the stocks owned by Bogart & Co., deducting the stock owned by the plaintiff, the sum of a little over $45,000, leaving between $7,000 and $8,000 as the proceeds of the sale of the plaintiff's stock, and after applying these proceeds to the balance of the debt due Savin & Co. from Bogart & Co. of $50,000 there remained a little over $3,000 in the hands of Savin & Co., which they claimed the right to apply on account towards the payment of another debt due them from Bogart & Co., but which was not

secured by the pledge of the stock in question. The plaintiff did not learn of the sale of his stock until about the 21st of June, 1884, at which time the price for such stock had reached par. The prices of the other stocks sold by the defendants, and which belonged to Bogart & Co., also rose soon after the stocks had been sold by Savin & Co., and to such an extent did the prices advance that if these stocks had been held by defendants up to June 4, 1884, and then sold at the market price, the amount realized at such sale would have been sufficient to pay the full amount of the call loan and interest, and would thus have left the stock of plaintiff free from any claim by reason of that loan. In May, 1885, the plaintiff commenced this action against the defendants Savin & Co., and also against the defendant Wheeler as assignee of Bogart & Co.

In the original complaint the plaintiff alleged that the other stocks pledged by Bogart & Co. sold for enough to pay their debt to the defendants Savin & Co., and that this stock of the plaintiff was sold for $9,000, and that the defendants Savin & Co. claimed the right to apply that sum to the payment of the balance due them from Bogart & Co. on another loan. The plaintiff asked judgment that the $9,000 might be adjudged to be his property and that Savin & Co. be directed to pay the same over to him and that the assignee be barred from all claim and interest therein. At the time he commenced this action the plaintiff did not know of the time, place or manner of sale of the stocks held by the defendants Savin & Co., nor did he know that they had been sold without any demand of payment on Bogart & Co. or their assignee, or that they had been sold without any notice of an intention to sell.

After this action was at issue and referred to a referee, the plaintiff learned for the first time and from the testimony of the defendant Savin in another action, the manner and time of sale of the stocks in question, and on the first trial of this action in May, 1889, if not before, he knew that such sale was not in strict accordance with the provisions of the by-laws of the New York Stock Exchange. The referee on the first

trial reported in favor of the defendants, and upon plaintiff's appeal the judgment was reversed by the General Term, from which the defendants appealed to the Court of Appeals, which court subsequently and upon their application allowed defendants to withdraw their appeal. Then the plaintiff upon motion papers asked the court for leave to amend his complaint by setting up the facts as to the illegal sale and by asking for damages for the sale of his stock by the defendants. This motion was granted upon condition of the payment of all the costs of all the defendants up to the making of the motion (amounting to over $1,200), which the plaintiff paid and amended his complaint accordingly. The defendants answered and denied any and all liability, and among other things alleged that the plaintiff had elected to affirm the sale of the stock and to proceed against defendants for the amount realized on the sale. The second trial was also before a referee, who gave judgment for the plaintiff for the highest price his stock reached intermediate the day of sale by defendants at the stock exchange and the 21st of June, 1884, deducting therefrom the balance of the original debt due Savin & Co. from Bogart & Co., after applying thereon the proceeds of the sale of the other mentioned stocks.

The plaintiff claims that the defendants should have been charged with the highest prices the other stocks reached within a reasonable time after their improper sale by defendants, in which case those stocks would have paid the $50,000 call loan debt in full and would have given plaintiff the highest price for his stock without any deductions whatever. The defendants Savin & Co. claim they were under no liability of any kind to the plaintiff, and that judgment ought to have been directed for them by the referee. The assignee, Wheeler, claimed that the moneys should have been directed to be paid to him as already stated.

*Thaddeus D. Kenneson* for defendants. When Savin & Vanderhoof made the call loan of $50,000 to O. M. Bogart & Co. on May 13, 1884, and received from that firm as collateral

security therefor the certificates of stock, including certificate 9728 for 100 shares of Missouri Pacific stock, they became purchasers for value thereof without notice. (*Felt* v. *Heye,* 23 How. Pr. 359; *McNeil* v. *F. N. Bank,* 46 N. Y. 325; *Thompson* v. *Toland,* 48 Cal. 99.) If Savin & Vanderhoof were purchasers for value of such certificate of Missouri Pacific stock, then Smith cannot recover in this action. (*H. Ins. Co.* v. *Halsey,* 8 N. Y. 271; *Colgrove* v. *Tallman,* 67 id. 95; *Calvo* v. *Davies,* 73 id. 211; *Harding* v. *Tift,* 75 id. 461; *Palmer* v. *Purdy,* 83 id. 144; *King* v. *T. B. & Ins. Co.,* 58 Tex. 669; *Gillespie* v. *Torrance,* 25 N. Y. 306; *Clements* v. *Yturria,* 81 id. 285; *Duncan* v. *Brennan,* 83 id. 487; *Talty* v. *F. S. & T. Co.,* 93 U. S. 321; *Lewis* v. *Mott,* 36 N. Y. 395; *Donald* v. *Suckling,* L. R. [1 Q. B.] 585; *Halliday* v. *Holgate,* L. R. [3 Ex.] 299; Code Civ. Pro. §§ 1718, 1728; *Thompson* v. *Toland,* 48 Cal. 99; *Myers* v. *M. N. Bank,* 27 Abb. [N. C.] 266.) The defense of an election of remedies by the plaintiff is proved and should defeat this action. (*Conrow* v. *Little,* 115 N. Y. 387; *Terry* v. *Munger,* 121 id. 161; *Crossman* v. *U. R. Co.,* 127 id. 34, 37; *People* v. *Wood,* 121 id. 522; *Post* v. *Doremus,* 60 id. 375; *Todd* v. *Marsily,* 49 Hun, 163.) The position taken by the General Term of the Supreme Court is untenable. (*Wilson* v. *Tumman,* 6 M. & G. 236; *Hamlin* v. *Sears,* 82 N. Y. 327; *M. Bank* v. *Livingston,* 72 id. 223.)

*J. A. Dennison* for plaintiff. Savin & Vanderhoof were trustees of all the stocks so pledged for the following purposes: For themselves to the extent of their debt (if they were *bona fide* holders, which is not admitted); for Smith to the extent of his stock, and for O. M. Bogart & Co. or their assignee for the surplus. (*Wheeler* v. *Newbold,* 16 N. Y. 392, 398; *Hayes* v. *Ward,* 4 Johns. Ch. 122, 129; *Schroppell* v. *Show,* 3 N. Y. 56, 57; *Grow* v. *Garlock,* 14 Abb. [N. C.] 487, 492; *Farwell* v. *I. Bank,* 90 N. Y. 483; *Gould* v. *C. T. Co.,* 23 Hun, 322.) The defendants Savin & Vanderhoof did not sell according to the rules of law governing the

rights of pledgor and pledgee; such sales can be made only
on due and reasonable notice of the time and place thereof,
and must be at public auction. (*Myers* v. *M. N. Bank*, 27
Abb. [N. C.] 266; *Baker* v. *Drake*, 66 N. Y. 518, 522;
*Gruman* v. *Smith*, 81 id. 25, 28; *Gillett* v. *Whiting*, 120 id.
402; *Markham* v. *Jaudin*, 41 id. 235; *Brass* v. *Worth*, 40
Barb. 648, 653, 654; *Milliken* v. *Dehon*, 27 N. Y. 364;
*Wheeler* v. *Newbold*, 16 id. 392; *Genet* v. *Howland*, 45 Barb.
560–563; *Ogden* v. *Lathrop*, 65 N. Y. 158–162; *Rankin* v.
*McCullough*, 12 Barb. 103–107; *Dykers* v. *Allen*, 7 Hill,
497, 499, 500.) Whether the plaintiff Smith was entitled to
notice or not, and whether Savin & Vanderhoof had notice of
his rights or not makes no difference in this case, and cannot
affect the judgment to the advantage of the defendants. (*Vose*
v. *Woods*, 26 Hun, 486–488; *Kerr* v. *Mount*, 28 N. Y. 659,
666; *Day* v. *Bach*, 87 id. 56–61.) Defendants' contention
that the plaintiff was not entitled to recover in this action,
because by the previous proceedings therein he had elected a
remedy other and different from that sought to be now
enforced is untenable. (Code Civ. Pro. § 723; *Degraw*
v. *Elimor*, 50 N. Y. 1; *Ward* v. *Kalbfleisch*, 21 How.
Pr. 283; *Terry* v. *Munger*, 121 N. Y. 161; *E. C. F.
Co.* v. *Hessee*, 103 id. 25; *Fowler* v. *B. S. Bank*, 113 id. 450;
*Bock* v. *Tuch*, 126 id. 53.) Savin & Vanderhoof were trustees
of this stock for the benefit of the surety as well as them-
selves; parting with it without the knowledge or consent of
the surety discharges their claim against the surety to the value
of the stock illegally sold. (Baylies on Sureties & Guar. 237,
238; *Phares* v. *Barbour*, 49 Ill. 370–373; *Hayes* v. *Ward*,
4 Johns. Ch. 122, 129; *Schroppell* v. *Show*, 3 N. Y. 446–457;
*Grow* v. *Garlock*, 14 Abb. [N. C.] 487–492.) This
court has power, and it is its duty, to direct the modification
of the judgment so as to conform the same to the facts found,
by applying the proper rules of law thereto. (*Outwater* v.
*Moore*, 124 N. Y. 66; *Brackett* v. *Griswold*, 128 id. 644,
648; *Price* v. *Price*, 33 Hun, 432; *Wood* v. *Baker*, 60 id.
337.)

*John Notman* for defendant Wheeler. The defendants Savin & Vanderhoof cannot offset the surplus arising, after the assignment was made, from the sale of the securities pledged to them over and above the amount of their two loans of $50,000 each, interest and expenses of sale, the deficiency on the borrowed and loaned stock transactions ascertained and fixed after the assignment when those transactions were closed out to the defendant assignee. (*Beckwith* v. *U. Bank*, 9 N. Y. 211; *Myers* v. *Davis*, 22 id. 489; *Roberts* v. *Carter*, 38 id. 107; *Martin* v. *Kunzmuller*, 37 id. 396; *Westlake* v. *Bostwick*, 3 J. & S. 256, 261; *Murray* v. *Deyo*, 10 Hun, 1, 6; *Bradley* v. *Angell*, 3 N. Y. 475.) The plaintiff is only entitled to such proportion of the surplus arising out of the loan in which his 100 shares of Missouri Pacific railroad stock entered as the proceeds of such stock, on the sale, bore to the whole value of all the securities in that particular loan. (*Gould* v. *C. T. Co.*, 6 Abb. [N. C.] 381.)

PECKHAM, J. The defendants Savin & Co. make a preliminary objection to the maintenance of this judgment on the ground that the plaintiff has elected by the form of his original complaint to treat the sale of the stocks as a valid and regular sale, and assuming its validity he has asked to recover from defendants Savin & Co. only the amount which they received from such sale. The present form of the action the defendants say is inconsistent with the original, for the reason that the cause of action as now set up is based upon the alleged illegal character of the sale of the plaintiff's stock and the consequent liability of the defendants to pay him the damage he has thereby suffered.

The plaintiff at the time of the commencement of the action supposed that the defendants had realized enough upon the sale of the other stocks to repay them the amount of the call loan, and that the only claim they made upon his stock was the right to apply it on other indebtedness. He also supposed his stock had sold for $9,000, and he demanded that sum from Savin & Co. It seems he was mistaken as to these

facts; the other stocks did not realize upon their sale enough to pay the debt due defendants, nor did his stock sell for $9,000, and the defendants claimed the right to hold his stock for the balance of the call loan debt, and then to hold what was left as payment on account towards other indebtedness of Bogart & Co. to them. The plaintiff was also ignorant of the fact that the sale of the stocks was made without notice and in violation of the rules of the stock exchange. As the plaintiff commenced his action in ignorance of these material facts, he ought not to be held as conclusively ratifying these alleged illegal sales, simply because while thus ignorant his complaint proceeded upon the ground of the validity of such sales and asked for the proceeds arising therefrom so far as his own stock was concerned.

When he became informed of the facts, after the action had been referred, we do not think that he lost his right to repudiate the validity of the sale by going on under the original complaint. It is evident, from the finding of the referee, that the plaintiff supposed he could then, and under the original complaint, prosecute the defendants for their wrongful and illegal sales, which he had then discovered, and to that end he gave evidence of the rules of the stock exchange, and upon appeal to the General Term the plaintiff still entertained such belief and claimed such right. When the courts decided against him upon that view, he then asked for an amendment, and, upon payment of all the costs incurred by all the defendants up to the time of the motion, he was permitted to amend his complaint. Under these circumstances we are of the opinion that there was no such election, with knowledge of all the facts proved in this case, as would preclude the plaintiff from insisting, under his amended complaint, upon the invalidity of the sale of his stock.

We must come, therefore, in this case to a consideration of its merits.

The defendants Savin & Co. must be treated as *bona fide* pledgees of the stock as a portion of their collateral security for the payment of the $50,000 call loan.

Some criticism was made upon the argument based upon the fact that the scrip for the 100 shares of Missouri Pacific had been issued in the name of the plaintiff, and the power of attorney to transfer the same was a detached paper, and the plaintiff's signature thereon was not acknowledged by plaintiff before a notary public, as required by the rules of the stock exchange, in order to make a good delivery upon a sale under those rules. This fact we regard as wholly immaterial for the purpose of charging the pledgees with notice of any defect in the title to the scrip on the part of the sub-pledgors. The power of attorney was full and complete for the purpose of transferring the right to the pledgees to demand of the railroad company a transfer of the scrip upon its books to the pledgees. A failure to comply with some rule of the stock exchange, in order to constitute a good delivery of the stock under the rule, has no significance upon the question of the good faith of the pledgee, and constitutes no notice to him which should put him upon inquiry as to the right or title of the pledgor.

There is no other evidence in the case that the defendants Savin & Co. were not *bona fide* pledgees, and we must hold that they were such with all the rights which such a position gave them. It would appear to be also immaterial whether the loan and the pledge of the securities were made under the rules of the stock exchange or subject to the ordinary rules appertaining to a pledge as collateral security for a loan of money. In either case the sale was in violation of the law upon the subject. The question before us is what are the rights of the plaintiff in the light of the circumstances above set forth?

When the pledge was made to them the defendants were entitled to regard Bogart & Co. as the owners of all the stock which was pledged, but when the plaintiff (being in fact the owner of the stock) notified the defendants of his rights before any sale was made by them, the plaintiff then stood, with reference to that stock, as a simple surety for the payment of the loan and with the right on his part to compel Savin & Co.

to apply the proceeds of the other securities held by them before resorting to the stock owned by him. (*Farwell* v. *Importers', etc., Nat. Bank,* 90 N. Y. 483.) The right of property in the stock did not pass to Bogart & Co. by the deposit made of it with them by plaintiff as security, and of course it it did not pass to Savin & Co. by reason of the deposit thereof by Bogart & Co. This right of property remained with the plaintiff, subject to the lien of Bogart & Co., and after their pledge to defendants, subject to defendants' lien also. (*Wheeler* v. *Newbould,* 16 N. Y. 392, 398.)

This action is in effect an action to recover damages for the conversion of the 100 shares of plaintiff's stock. After his notice to defendants of his ownership of that stock, the plaintiff had the right simply to demand that the other stock for which his own was security, should be sold for its full value. He stood in no such position with regard to the other stock, of which he was not the owner, as would entitle him to complain that it had not been sold in accordance with the stock exchange rules, so long as it was in fact sold for its full value on the day of its sale. If the rules had been observed the stock might even then have been sold on that day and at that place. So long as it was in fact sold for its full value the plaintiff cannot complain.

There is no finding and no proof that this stock was not so sold.

So far as appears the only difference between the sale that actually took place and that which might have taken place if the stock had been sold " under the rule," is that in the latter case the sale would have been made by one of the officers of the exchange at a certain hour of the day and at public auction.

The price actually received was as high as the price of any stock of that kind reached that day; at least there is no evidence that it was not, and it would appear that the price actually received for the stock was its market value at that time. This was all that the plaintiff could require in regard to stock which he never owned or had possession of.

If the defendants, by reason of the violation of the stock

exchange rule, laid themselves open to a charge of conversion as in favor of Bogart & Co. or their assignee, with reference to the stock owned by them, such cause of action was a matter of no legal interest to plaintiff so long as that stock then sold for its full value, and he could not, at any rate in such an action as the one he has brought, insist upon charging Savin & Co. with the highest price of stock which he never owned, as he now claims is his right. Whatever cause of action Bogart & Co. might have for an illegal sale belongs to them and cannot be set up by plaintiff as an affirmative claim on his part. . (*Gillespie* v. *Torrance,* 25 N. Y. 306.)

In regard to the stock owned by plaintiff, however, he had the right, by reason of his ownership and because of the wrongful act of Bogart & Co. in pledging such stock, to insist that the defendants Savin & Co. should abide by their contract of pledge, and that they should sell his stock in strict accordance with the law, and in case of a violation of duty on the part of defendants which resulted in an illegal sale of the plaintiff's stock, he had the right to complain of such violation and to sue to recover damages therefor.

The plaintiff in fact was not indebted to Bogart & Co. when they unlawfully pledged his stock, and they had no right as against plaintiff to claim or take possession of his stock from the hands of Savin & Co. The latter had their lien on it as security, and subject to that lien the plaintiff was the owner. The defendants Savin & Co. having violated the law in selling the stock as they did, without notice to their original pledgors or their assignee, the plaintiff, by reason of his ownership of the stock, could thereafter treat such sale as a conversion, and after the proceeds of the sale of the other stock were applied towards the payment of the debt of Bogart & Co. to defendants, the plaintiff had the right to claim the highest price which his stock reached within a reasonable time after its illegal sale by defendants (*Wright* v. *Bank, etc.,* 110 N. Y. 237), and from that sum should be deducted the balance of the debt due from Bogart & Co. to Savin & Co. I should say that in general the time elapsing between the

14th of May and the 21st of the following June was much more than a reasonable time in which to purchase back stock of this kind when it had been illegally sold, but the fact appears that the plaintiff was not aware of such sale until about near the latter date, and in such case the time allowed to take the highest price is of course not unreasonable.

The defendants cite the case of *Thompson* v. *St. Nicholas Natl. Bank* (113 N. Y. 325) as conclusive in their favor and as showing entire absence of all liability on their part to plaintiff. I do not think the case is in point. The pledgee had by the contract in question in that case full power to sell at public or private sale and without notice, and power to apply the proceeds in payment of the indebtedness for which the pledge was security. This right was not affected by notice from the original plaintiff that he owned the bonds, and he had no right to forbid defendant to part with the stock in the manner which it was authorized to do by its contract with the pledgor. The defendant did sell in a valid manner in the *Thompson* case, while in this case the defendants sold in an illegal manner and were thus techically guilty of a conversion. We may assume here that the plaintiff in the *Thompson* case obtained no right by his notice to the defendant to insist that it should only sell after notice to him. The defendant was a *bona fide* pledgee for value of the bonds, and at the time when the loan was made and the bonds pledged, the contract was made providing for a sale without notice and at private sale or by auction. This privilege was part of the security, and the plaintiff could not by any notice impair that security or alter the right which defendant had obtained by its contract made at the time when the loan was effected and the securities pledged. But the fact that the defendant in that case had the right originally under its contract to make and did make a valid sale without notice to the plaintiff therein, furnishes no ground for permitting the defendants here to make an illegal sale of the plaintiff's stock without responding in damages to him on account of such illegal act. The illegal sale by these defendants consists (aside from the question of a

lack of a proper demand of payment on Bogart & Co., or their assignee) in an omission of any notice of sale to Bogart & Co., or their assignee, and also of a sale in violation of the rules of the stock exchange. And the plaintiff by reason of his ownership can take advantage of that violation of law on the part of the defendants and sue for this conversion of his stock. The *Thompson* case was not decided in favor of the defendant bank while assuming that it had sold the bonds in violation of the rights of Capron and Merriam, their pledgors. On the contrary, the reasoning of the case shows it was assumed the sale had been properly made so far as their rights were concerned. And therein lies the important difference in the facts in the two cases. In the *Thompson* case the sale was proper and in this case it was not.

The deduction of the balance of the indebtedness of Bogart & Co. to defendants Savin & Co., from the price allowed for plaintiff's stock, is proper because the stock was originally pledged for that debt, and although the defendants by their mode of sale were guilty of a technical conversion of the stock to their own use, yet the result of such conversion resolves itself into a question of damage; what damages has the plaintiff suffered by reason of this conversion? And, we think, upon that question it is proper to deduct what remains of the debt for which the plaintiff's stock originally stood as security, from the highest amount for which the stock sold within a reasonable time after its conversion. (*Wright* v. *Bank of Metropolis*, 110 N. Y., *supra*, and cases cited; *Minor* v. *Beveridge*, decided at this term.)

As to the defendant Wheeler, the assignee of Bogart & Co., we think he has no cause of complaint in this case. The judgment bars him of all right to the stock in question or to any portion of the proceeds thereof. After Bogart & Co. ceased to be creditors of the plaintiff, neither they nor their assignee had any further interest in this stock. The referee finds that plaintiff was not equitably indebted to Bogart & Co. in any sum whatever after the 8th day of May, 1884. They were not in fact creditors after that date.

The judgment should be affirmed as against all appellants, without costs in this court in favor of any one.

All concur.

Judgment affirmed.