## SMITH v. SAVIN et al.

(Supreme Court, General Term, First Department. February 14, 1890.)

1. PLEDGE—HYPOTHECATION—RIGHTS OF PLEDGEOR.

B. & Co., private bankers, negotiated several loans with defendants, and as collateral security for one of them pledged stock deposited with them by plaintiff as security for any overdrafts he might make. B. & Co. having failed, defendants sold out the different stocks deposited with them. Upon the sale of the securities pledged for the first loan, there was a surplus; and on the sale of the securities for the second loan, among which was plaintiff's stock, a surplus was realized, but on the closing out of the other transactions B. & Co. remained indebted to defendants. *Held* that, as against the true owners of the various securities, defendants were holders for value only to the extent of the particular loans made upon the particular securities; that plaintiff had no claim on the surplus from the sale of the stock pledged for the first loan, but could recover the whole of the surplus from the sales of the collaterals for the second loan, in the absence of other claims to the fund; and was not restricted to such proportion of that surplus as his stock bore to the whole of the securities pledged.

2. SAME—LIABILITY OF BONA FIDE HOLDER.

Plaintiff's shares were sold on May 14th, but, because of the peculiar power of attorney plaintiff had attached to the certificate, they were not a good delivery upon the stock exchange, and, because of a notice given by plaintiff, defendants were unable to transfer the stock until June 24th. *Held*, that defendants were chargeable with the value of the stock as of May 14th, the date of the sale.

3. SAME.

The fact that the power of attorney attached to the certificate was not of the form authorized by the stock exchange did not affect defendants' rights as *bona fide* holders.

Appeal from a judgment entered upon the report of a referee.

Action by Frederick H. Smith against Francis W. Savin and Elisha W. Vanderhoff, and John Wheeler as assignee and receiver of O. M. Bogart & Co., and others, defendants. A reference was had, and plaintiff and defendant Wheeler appeal from the judgment entered on the report of the referee.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

J. A. Dennison, (Leslie W. Russell, of counsel,) for appellant Smith. John Notman, for appellant Wheeler. Henry A. Root, (Thaddeus D. Kenneson, of counsel,) for respondents.

VAN BRUNT, P. J. This action was brought to reach the proceeds arising from the sale of 100 shares of the stock of the Missouri Pacific Railroad Company, alleged to be in the possession of the defendants Savin & Vanderhoff. The action having been referred to a referee, the following facts appeared: For many years prior to the dates mentioned in the complaint the plaintiff had been doing a banking business with the firm of O. M. Bogart & Co. In the forepart of May, 1884, he deposited with them a large amount of stock and United States bonds as security for any overdrafts he might make. On the 13th day of that month he was indebted to that firm in the sum of $48,-170.79. O. M. Bogart & Co., without the plaintiff's knowledge and consent, pledged the stock and bonds of the plaintiff as security for certain moneys which they had borrowed from divers persons. On the 8th of May they had hypothecated to the Central Trust Company $55,000 of United States bonds belonging to the plaintiff, and received therefor $55,000 in cash, which the plaintiff subsequently, on the 26th of May, had to pay to said trust company in order to redeem said bonds. On the 13th of May the firm of Bogart & Co. negotiated a call loan with the defendants Savin & Vanderhoff of $50,000, and as collateral security therefor deposited a large amount of stocks. Subsequently, on the same day, they negotiated another loan of $50,000 with Savin & Vanderhoff, and deposited as collateral therefor a large quantity of stocks, among which was a certificate, No. 9,728, for 100 shares of Missouri Pacific stock, belonging to the plaintiff, being the stock mentioned in the complaint. These hypothecations were made without the knowledge and consent

of the plaintiff.  It further appeared that there were also certain other trans-
actions between Bogart & Co. and Savin & Vanderhoff which had taken place
prior to the 13th of May, 1884.  On the 14th of May, Bogart & Co. made a
general assignment for the benefit of creditors to the defendant Wheeler, no-
tice of which assignment was read off in the stock exchange at about 10:30
A. M. of that day.  Upon hearing the announcement of the failure, Savin,
with the securities for the two loans, went to the office of Bogart & Co., and
there made a demand for the payment of the loans.  They not being paid, he
went to the stock exchange and sold out the stocks.  No notice of such sale
was ever given to Bogart & Co., to Wheeler, the assignee, or to the plaintiff.
Under this sale, the defendant Savin undertook to deliver the stock so sold,
but the purchaser refused to accept the 100 shares of Missouri Pacific stand-
ing in the plaintiff's name.  Because of some irregularity in reference to the
power of attorney attached to the certificate of stock, Savin & Vanderhoff at-
tempted to have said stock transferred to their names; but, in consequence
of a notice which the plaintiff had given to the company, the company refused
to make such transfer until they were indemnified, and said transfer was not
perfected until about the 21st of June, when they delivered the said stock
upon the sale made by them.  Upon the sale of the stock hypothecated for
the first $50,000 loan, there resulted a surplus of $4,293.05; and on the sale
of the stock hypothecated for the second loan, for which the plaintiff's 100
shares of Missouri Pacific were also pledged, there resulted a surplus of
$3,511.81.  On the same day the defendants Savin & Vanderhoff undertook
to close out their other transactions with Bogart & Co., by the purchase and
sale of stocks, and there resulted a deficiency of $5,131.35 on these transac-
tions, leaving Bogart & Co. indebted to them in that amount; which sum the
defendant Savin claimed the right to deduct from the surplus arising upon
the sale of stocks mentioned, leaving a balance in their hands, after deduct-
ing commissions amounting to the sum of $2,733.61.  The referee sustained
their claim, and gave judgment for the plaintiff for said amount, and to the
defendants Savin & Vanderhoff for their costs.

It would seem to be clear that the firm of Bogart & Co. had no enforceable
claim on the 14th of May, 1884, against the ·plaintiff, for their advances to
him, because they had, without the plaintiff's knowledge or consent, pledged
the securities belonging to him to secure their own indebtedness.  If upon
the day in question  Bogart & Co. had made any claim upon the plaintiff be-
cause of their advances to him, the fact of their conversion of his securities
would have been a complete defense to any such claim; and we must there-
fore consider the rights of the parties, in reference to the proportion of the
surplus arising on the sale of these stocks by Savin & Vanderhoff, entirely
independent of and free from any claim that Bogart & Co. might have had
against Smith, had they not misappropriated the collaterals which he had de-
posited with them.  It would appear that the various transactions between
Bogart & Co. and the defendants Savin & Vanderhoff were separate and dis-
tinct, and that the collaterals deposited as security for one transaction had no
relation to the collaterals deposited as security for the other transactions; and
therefore, as against parties who are the true owners of the securities which
were pledged upon these various loans, the firm of Savin & Vanderhoff are
holders for value only to the extent of the particular loans made upon the par-
ticular securities.  It appears from the evidence that upon the sale of the se-
curities pledged upon the first loan of $50,000 a surplus arose of $4,293.05,
and that upon the sale of the securities pledged upon the second loan, includ-
ing the 100 shares of Missouri Pacific stock, a surplus was realized of $3,-
511.81; and that, upon the closing out of the other stock transactions between
Bogart and Savin & Vanderhoff, Bogart remained indebted to Savin & Van-
derhoff in the sum of $5,131.25, as has already been stated.  The learned ref-
eree, in settling the rights of the parties under this state of facts, commingled

the surplus arising upon the sale of the stocks into one fund, and deducted the indebtedness due to Savin from Bogart therefrom, giving the plaintiff judgment for the balance. We do not see how any such commingling of those funds can be supported. Neither can the claim made upon the part of the plaintiff that he is entitled to the surplus arising from the sale of the stocks pledged as collateral to both loans, because upon the first loan made on the 14th of May there does not seem to have been any stock of the plaintiff pledged, and it is only in the second loan that his 100 shares of Missouri Pacific stock were pledged. Savin & Vanderhoff would have no right to charge their general indebtedness against any portion of this surplus, to the detriment of the rights of the plaintiff; but the plaintiff would have a right to recover the $3,511.81, the surplus arising from the sales of the stocks, among which were the plaintiff's shares, in the absence of other claims and the proof of other rights to this fund.

The claim made upon the part of the assignee that the plaintiff should only have such proportion of this surplus as his stock bore to the whole of the securities pledged cannot be sustained. Bogart & Co. were wrong-doers, as far as the plaintiff was concerned, and their representative can claim no rights in any portion of this surplus, because, under such circumstances, equity would require the loan to be paid out of the other securities pledged, before resort could be had to the stock belonging to the plaintiff which had been wrongfully appropriated. But we cannot see any reason for the allowance of any claim upon the part of the plaintiff for the surplus remaining after the sale of the securities pledged upon the first loan, as none of the plaintiff's stocks were contained in such pledge, and he consequently could have no interest in their proceeds.

As to the claim that Savin & Vanderhoff should be charged with the value of the Missouri Pacific stock as of the 21st of June, 1884, we do not think it can be sustained. These shares were sold on the 14th of May, and, because of the peculiar power of attorney attached to the certificate, they were not a good delivery upon the stock exchange; and, because of the notice given by the plaintiff not to transfer the same, Savin & Vanderhoff were unable to transfer the same, as authorized to do by the power of attorney which the plaintiff had attached to the certificates. They therefore borrowed the stock to deliver under the sale of the 14th of May, until they were enabled, by indemnifying the company, to place themselves in a position to transfer the stock standing in the name of the plaintiff, and thus return the stock borrowed. Under this state of facts, the legal result would seem to be that the stock was sold on the 14th of May, but the delivery of the same, in consequence of the circumstances which have been adverted to, was not made until the 21st of June. It does not seem to us that there is any question in regard to the regularity of the sales of the stocks by Savin & Vanderhoff which can be raised by the plaintiffs now, because no such claim is set up in the complaint. The relief asked for is that Savin & Vanderhoff account for the proceeds of the sale thereof, and the theory upon which the cause of action is there stated is that the plaintiff is entitled to the proceeds of the sale of this stock. Neither can the objection be sustained that Savin & Vanderhoff were not *bona fide* holders of this 100 shares of Missouri Pacific stock because of the peculiar character of the power of attorney attached to the certificate. The mere fact that a certificate, with such power of attorney attached, was not a good delivery upon the stock exchange, unless acknowledged, etc., in no way affected their legal right to hold the security to which the plaintiff had attached this power of attorney for the purpose of enabling the holder of that certificate to transfer the shares thereby represented upon the books of the company. It has not been deemed necessary upon this appeal to consider the question as to the money remaining in the hands of the stock exchange, as, for the reasons already stated, the judgment must be reversed and a new trial had. We

therefore express no opinion as to the propriety of the position taken by the referee in reference to the claim as made by the defendant the assignee of Bogart & Co. in that respect. For the reasons already stated, the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.