## ENO v. SAGE et al.

(Supreme Court, Special Term, New York County. November, 1913.)

1. PLEDGES (§ 42*)—TITLE TO PROPERTY—TRANSFER BY PLEDGEE.

Where bonds were merely lodged with a brokerage firm for safe-keeping, only one who had in good faith loaned money upon the bonds in reliance on the apparent title conferred upon the brokers could acquire title thereto as against the real owner.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 101; Dec. Dig. § 42.*]

2. CONTRACTS (§ 138*)—ILLEGAL CONTRACTS—ENFORCEMENT.

While an assignment by the owner of his interest in bonds, made with the tacit understanding that he would not prosecute a broker who had wrongfully pledged the bonds, and in whose interest the assignment was made, was illegal and unenforceable between the parties, it will not be disturbed after fully executed; the law leaving the parties where they placed themselves.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700; Dec. Dig. § 138.*]

3. PLEDGES (§ 42*)—REHYPOTHECATION.

Brokers who received bonds in pledge for money loaned could not rehypothecate the bonds for a larger sum, or mingle them with other collateral securities, to themselves secure a larger loan.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 101; Dec. Dig. § 42.*]

4. PLEDGES (§ 47*)—RECOVERY OF PROPERTY—DISCHARGE OF DEBT.

One who deposited bonds with a brokerage firm as margin could, upon paying to the firm any balance due on account, recover such bonds from it subject to the prior claims of one who had in good faith loaned money to the brokers thereon.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 111, 112; Dec. Dig. § 47.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. PLEDGES (§ 22*)—RIGHTS OF PLEDGEE.

A pledgee is a holder of the pledged property for value only to the extent of the particular loan upon the particular security.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 46; Dec. Dig. § 22.*]

6. ASSIGNMENTS FOR BENEFIT OR CREDITORS (§ 184*)—RIGHTS OF ASSIGNEE.

An assignee for the benefit of creditors stands in no better position than does the debtor at the time of the execution of the assignment.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 555-571; Dec. Dig. § 184.*]

7. PLEDGES (§ 42*)—RIGHTS OF PLEDGORS.

Where brokers with whom bonds and other securities were deposited wrongfully borrowed money thereon, giving them as collateral, claimants of the securities deposited cannot have the securities of any other claimants applied to the satisfaction of a superior claim against all the securities, to the exoneration of their own securities.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 101; Dec. Dig. § 42.*]

8. PLEDGES (§ 42*)—CLAIMS TO PROPERTY.

Where bonds and other securities, deposited with a brokerage firm, were pledged by the firm without authority to defendant in good faith, so as to give her a claim superior to that of the owners, if the fund available from the sale of the securities would be insufficient, after paying defendant, to pay in full the claims of the owners, the securities should be sold separately, and the surplus, after discharging such superior claim and the costs of the action, should be divided between the other claimants in proportion to their respective claims.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 101; Dec. Dig. § 42.*]

Action by John C. Eno against Margaret Olivia Sage and others. Judgment as stated.

Hitchings & Dow, of New York City (Hector M. Hitchings, of New York City, of counsel), for plaintiff.

Herbert K. Stockton, of New York City (Henry L. de Forest, of New York City, of counsel), for defendant Sage and other executors.

De Forest Bros., of New York City (Henry L. de Forest, of New York City, of counsel), for defendant Sage individually.

Edward S. Frith, of New York City, for defendant Coughlan.

Coudert Bros., of New York City (Howard Thayer Kingsbury, of New York City, of counsel), for defendant Van Norden.

Taylor, Jackson & Brophy, of New York City (Howard Taylor, Richard F. Goldsborough, and Charles B. Brophy, all of New York City, of counsel), for defendant Wiegand.

GIEGERICH, J. The action is to determine the claims of various parties to certain securities pledged as collateral to two loans made by Mr. Russell Sage. One, for $50,000, was made on December 1, 1896, to the firm of Decker, Howell & Co., stockbrokers, upon their promissory note, payable on demand, and the other, for $2,500, was made on February 16, 1897, to Mr. Joseph S. Decker individually, he being then a member of said firm, upon his individual promissory note, payable on demand. Certain securities were pledged as collateral se-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

curity for the payment of said loans. The notes were renewed when they became due, and they became the property first of Mr. Sage's estate and then of Mrs. Sage, his widow. The said notes were, in accordance with the terms of Mr. Sage's will, indorsed without recourse to Mrs. Sage individually, and, with the collateral security thereto, were transferred to her possession, and she is now the legal owner and holder thereof.

There is no question as to the primary right of Mrs. Sage to foreclose and sell so much of the securities as is sufficient to pay the loans and interest, her husband having accepted the securities as collateral for said loans, and in making them relied in good faith upon the borrowers' apparent title thereto. Tompkins v. Morton Trust Co., 91 App. Div. 274, 86 N. Y. Supp. 520, affirmed on opinion below 181 N. Y. 578, 74 N. E. 1126; Matter of Mills, 125 App. Div. 730, 110 N. Y. Supp. 314, affirmed without opinion 193 N. Y. 626, 86 N. E. 1128. Neither is there any question with regard to the rights of all the parties to have all the collateral except $15,000 Galveston-Houston and Henderson first mortgage bonds, $30,000 South Yuba Water Company bonds, and $8,000 city of Houston bonds sold and applied upon the loans before the application of these securities. The plaintiff claims the entire $15,000 Galveston-Houston and Henderson bonds by virtue of the transactions hereinafter stated. The defendant Van Norden claims the $30,000 South Yuba Water Company bonds. They unquestionably belong to him. They had been lodged by him with the firm of Decker, Howell & Co. in December, 1895, for the purpose of obtaining a loan of $15,000, which Mr. Decker informed Mr. Van Norden would be secured from Mr. Sage. A number of years previous Mr. Van Norden had had an active account with said firm, but at the time in question this was the only transaction between them. The defendant Wiegand, as the executor of the last will and testament of Henry O. Seixas, deceased, claims, subject to Mrs. Sage's rights, all of the collateral given for the payment of the individual note of Mr. Decker, to wit, $3,000 of the city of Houston bonds, and claims also, subject to Mrs. Sage's rights, the $5,000 city of Houston bonds pledged to secure the payment of the loan of $50,000 made by Mr. Sage to Decker, Howell & Co. The facts in relation to the claim of the Seixas estate will be discussed later. The defendant Coughlan, as assignee of Decker, Howell & Co., claims that all bonds must be sold and all surplus paid over to him. It appears from the evidence that the Galveston-Houston and Henderson bonds have since matured and were collected, with interest, and applied towards the payment of the loan of $50,000.

[1] These bonds were the exclusive property of one William M. Fleiss and had simply been lodged by him with Decker, Howell & Co. for safe-keeping. No title to such bonds as against Mr. Fleiss could be acquired by any one except a person who had in good faith loaned money upon them in reliance on the apparent title that had been conferred upon the brokers. Tompkins v. Morton Trust Co., supra; Matter of Mills, supra. On July 12, 1897, Decker, Howell & Co. made a general assignment to Alanson Fisher, Jr., for the benefit of their creditors. Shortly after such assignment was made, Mr. Fleiss dis-

covered that the Galveston-Houston and Henderson bonds had been pledged by the brokers with Mr. Sage and he demanded their return and threatened criminal proceedings unless they were returned to him. Decker and Williams appealed to Mr. Cromwell, their counsel, for assistance, and to avert such prosecution Mrs. Emma Williams, wife of one of the partners of the firm, gave to Mr. Mahoney, a clerk in Mr. Cromwell's office, a bond and mortgage for $12,000 upon a house in Pacific street, Brooklyn, of the value of about $8,000, and Mr. Decker, the other partner, made his promissory note to the plaintiff's order for $12,000, payable one year after date, and the plaintiff indorsed the same with "protest waived," and Mrs. Williams likewise indorsed the same. Upon the strength of Mrs. Williams' bond and mortgage and of the above note, Mr. Cromwell then paid to Mr. Fleiss $11,625, and the latter made an assignment to Mahoney of all his right, title, and interest in the bonds. Mahoney executed an assignment in blank of the bonds and of the same rights. Although the brokers were heavily indebted to the plaintiff at the time of their failure, they implored him to come to their rescue, which he did, as indicated, and he further agreed that he would save Mrs. Williams harmless from her mortgage obligation. Mr. Cromwell having received large sums of money for account of the plaintiff in August, 1900, credited himself with $12,000 in reimbursement of his advances in the matter and charged the plaintiff's account with the payment of such loan and caused the Williams mortgage to be satisfied and Mrs. Williams to be relieved from her liability as indorser of the note above mentioned. After Mr. Cromwell's accounts with the plaintiff were settled by judicial proceedings in 1912, the assignment by Fleiss to Mahoney and the assignment by Mahoney came into the plaintiff's possession and he is still the owner thereof. These assignments provide expressly for subrogation, and the plaintiff by the express terms thereof has succeeded to all of the rights and remedies of such assignors in the bonds. Serat v. Utica, Ithaca & Elmira Ry., 102 N. Y. 681, 6 N. E. 795.

[2] It is urged by the defendants that, if the assignment of Mr. Fleiss' claims in the Galveston-Houston and Henderson bonds were incident to compounding a felony, equity will not give its assistance to the plaintiff, who took title with such an understanding. I think that the agreement which resulted in the assignment by Mr. Fleiss of his bonds must be held to have been an illegal agreement, inasmuch as part of the consideration for the payment made to him was an implied understanding that he would abstain from the prosecution of a criminal charge against Decker and Williams. This sufficiently appears both from the plaintiff's admissions in the sixth paragraph of his complaint and from the testimony. So long as the agreement remained executory, it could not have been enforced by any of the parties to it. But it was fully executed. The money was paid and the bonds were assigned. Having been so executed, it could not be upset by any of the parties to the agreement (Haynes v. Rudd, 102 N. Y. 372, 7 N. E. 287, 55 Am. Rep. 815), and I do not know of any principle which would enable third persons to upset it (see Moseley v. Moseley, 15 N.

Y. 334). The title to the money passed to Fleiss and the title to the bonds passed to his assignee, and is now vested in the plaintiff. The law will leave these titles where it finds them. Nor is it the fact, as contended for by the defendants, that the plaintiff has released any security that he had for the moneys advanced in effecting the settlement. While Mrs. Williams was always liable to Mr. Cromwell upon her indorsement of the note and her property was liable to him upon her mortgage, neither was at any time liable to the plaintiff, for it was understood from the outset that the plaintiff was to save her harmless from these obligations, which were given solely for the better security of Mr. Cromwell. There is no doubt that the Fleiss bonds were wrongfully pledged with Mr. Sage. This is clearly shown by the conduct of the parties concerned when the fact was discovered by Mr. Fleiss—and there is other testimony to the same effect.

[3] It also seems clear that the pledge of the Van Norden bonds, as part of the collateral for the $50,000 loan, was wrongful. Mr. Van Norden borrowed $15,000 from Decker, Howell & Co. upon the security of his bonds, and they had no right to rehypothecate the bonds for any greater sum or to mingle them with other collateral to secure a larger loan. McNeil v. Tenth Nat. Bank, 46 N. Y. 325, 329, 7 Am. Rep. 341; Douglas v. Carpenter, 17 App. Div. 329, 45 N. Y. Supp. 219. Mr. Van Norden had not authorized the rehypothecation of his bonds in this manner and did not know that it had been done until long after the failure of the brokers.

[4] As to the claim of the estate of Henry O. Seixas to the city of Houston bonds, it appears from the evidence that $15,000 of such bonds belonged to Mr. Seixas and that he deposited them with Decker, Howell & Co. "as margins." It further appears, however, that through the sale of $2,000 of such bonds and other securities his entire indebtedness to them was paid, leaving a balance due to him of $2,245.92 at the time of the execution of the assignment for the benefit of creditors. There was thus left free and clear as between Mr. Seixas and his brokers thirteen of such bonds, eight of which had been lodged with Mr. Sage as collateral for said loans. By the payment of the indebtedness of Seixas to the brokers, whatever lien they may have had upon the bonds in question for the payment of any balance which might have become due on the speculative account was discharged, and the assignee therefore has no claim or interest therein and the executor of Mr. Seixas is entitled, subject to Mrs. Sage's right, to the city of Houston bonds which were pledged as collateral for the payment of the loan of $50,000. Tompkins v. Morton Trust Co., supra; In re T. A. McIntyre & Co., 181 Fed. 955, 958, 104 C. C. A. 419, citing Thomas v. Taggart, 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845. Even if these views be erroneous and Mr. Seixas' speculative account showed, as claimed, a large debit balance at the time of the pledge, the brokers had only a limited right of rehypothecation of the securities by themselves, separate and apart from others, for an amount not exceeding the indebtedness, and the mingling of the bonds so deposited "as margin" with other collateral to secure the $50,000 loan, a sum larger than the indebtedness by Seixas to the brokers, at the time of the pledge,

was wrongful. Douglas v. Carpenter, 17 App. Div. 329, 333, 45 N. Y. Supp. 219.

[5] It appears that $3,000 of the city of Houston bonds, which were pledged by Mr. Decker personally for a loan of $2,500 to him by Mr. Sage, were deposited with Decker, Howell & Co. Mr. Decker individually never had any right to the possession of these bonds, as bailee or otherwise, and much less any right to pledge them. Such bonds could not have been applied to the payment of a loss, if any had arisen on the sale of the securities given for the $50,000 loan, since the pledgee is a holder for value only to the extent of the particular loan upon the particular security. Smith v. Savin, 56 Hun, 640, 9 N. Y. Supp. 106. See also, same case, second trial, 141 N. Y. 315, 36 N. E. 338. Mr. Seixas notified Mr. Sage promptly of his ownership of the bonds in question, and his right to the same subject to the pledgee's right of Mrs. Sage seems to be clearly established.

[6] The assignee, of course, stands in no better position than did the brokers at the time of the execution of the general assignment, at which time, as above shown, Mr. Seixas was a creditor of the brokers. In re T. A. McIntyre & Co., supra. The defendant Coughlan, an assignee, maintains that the claim of the plaintiff and of his codefendants, except Mrs. Sage, are barred by the statute of limitations, but, nevertheless, asserts his own claim to the securities or their proceeds. As none of the parties makes any claim against the assignee, and as all the parties to the action, including the assignee, are asserting their claims against the fund, it is difficult to see upon what theory the assignee can seek to interpose the statute as a defense to the claims of the other claimants. The defense was available to Mrs. Sage, but she has refused to avail herself of it. It is not available to any of the other claimants.

[7] If the views hereinbefore expressed relative to the merits of the respective claims of Mrs. Sage, the plaintiff, and the defendants Van Norden and Wiegand as executors, are correct, it follows that none of the claimants is entitled to have the securities of any other claimant applied to the satisfaction of Mrs. Sage's claim in exoneration of his own securities. None of the claimants can properly say that, while the rehypothecation of his own securities was wrongful, the rehypothecation of any of the other securities as collateral to the $50,000 loan was authorized by the owner. This is the test when the exoneration of some of the collateral is claimed at the expense of the rest. Dos Passos on Stockbrokers (2d Ed.) 282. How, then, shall the surplus which remains after satisfying the claim of Mrs. Sage be divided among the several claimants? The difference in the situation of the parties is that neither Fleiss nor Seixas ever received anything as the proceeds of the pledge of their securities, while Van Norden received a loan of $15,000, which has never been repaid. I think therefore that, if the fund were sufficient to satisfy the claims of all the claimants in full, the plaintiff would be entitled to receive the sum which was collected upon the maturity of his bonds, plus interest from the time when they were paid, together with the aggregate of the interest payments collected upon them while they were in the hands of Mr.

Sage and his successors in interest. The Seixas estate, similarly, would be entitled to the proceeds to be derived from the sale of the Seixas bonds, together with the interest which has been collected upon them. Van Norden would be entitled to the proceeds of the sale of his bonds plus the interest which has been collected upon them, less the loan of $15,000 and interest accrued thereon.

[8] As the fund will be insufficient, after paying Mrs. Sage, to meet these claims in full, the securities should be sold separately, and, when the sums ascertained to be due to each of the claimants are determined, the surplus remaining after discharging the claim of Mrs. Sage and the costs of the action should be divided between the three claimants in proportion to their respective claims. The Seixas estate will, of course, be entitled to the surplus remaining from the securities pledged upon the $2,500 loan. If the parties are content to have the sale and distribution made by Mrs. Sage, it would seem that a final judgment might be entered at once. Otherwise an interlocutory judgment fixing the rights of the parties and appointing a referee to make the sale and report to the court should be entered, leaving the distribution to be directed by a final judgment to be entered upon confirmation of the sale. Costs to all the parties should be allowed out of the fund. As the requests for findings of some of the parties do not appear to have been served upon their adversaries, let those submitted, or new ones if so desired, be served by the respective parties litigant within five days after the publication hereof. Briefs in relation to such requests to find may be left with the clerk within two days after such service, at the expiration of which time all papers are to be submitted.